The STATE of Ohio, Appellee,

v.

JACOB, Appellant.

[Cite as State v. Jacob, 185 Ohio App.3d 408, 2009-Ohio-7048.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23033

Decided Dec. 30, 2009.

409

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Melissa M. Ford, Assistant Prosecuting Attorney, for appellee.

Jennifer S. Getty, for appellant.

FROELICH, Judge.

{¶ 1} Kevin Jacob appeals from a judgment of the Montgomery County Court of Common Pleas that denied his motions to suppress evidence and convicted him, upon his no contest pleas, of two counts of theft from an elderly person.

{¶ 2} The Ohio municipal court judge who issued the search warrant, which was to be executed in California, lacked the authority to do so, which resulted in a fundamental violation of Jacob's Fourth Amendment rights and required suppression of the evidence obtained pursuant to the warrant. Therefore, the judgment of the trial court is reversed.

I

{¶ 3} According to an affidavit offered in support of the search warrant, Paul Shultz of Miami Township, Ohio, entrusted Jacob with 313 Hummel figurines with the understanding that Jacob would photograph them and offer them for sale on the Internet. The proceeds on any sales would be paid to Shultz, and Jacob would receive a commission. In the following months, Shultz lost contact with

Jacob, and Shultz reported the matter to the police. Through investigation, the police and/or Shultz learned that Jacob had sold eight of Shultz's figurines to a buyer in New York and had broken a promise to deliver more figurines after the buyer wired him a substantial sum of money.

{¶ 4} In February 2008, Jacob was indicted in the Montgomery County Court of Common Pleas on one count of theft from an elderly person of property having a value of $100,000 or more, in violation of R.C. 2913.02(A)(2). On February 22, 2008, Detective Patrick McCoy of the Miami Township (Ohio) Police Department obtained a search warrant from the Miamisburg (Ohio) Municipal Court to search Jacob, a woman named "Jamie L. (Rant) Jacob," a residence located at 74 Loma Vista Drive, Burlingame, San Mateo County, California, and two specified vehicles. The warrant did not specify that the Loma Vista address was Jacob's residence. The warrant was then faxed to Officer Gabriel Alcaraz of the San Francisco Police Department. Officer Alcaraz executed the search warrant on February 23, 2008, and confiscated the following items: 353 Hummel figurines, computers, bank documents, cell phones, digital images, and other paperwork related to buying or selling Hummel figurines. There is no dispute that these items were within the scope of the warrant.

{¶ 5} Jacob was arrested in California and extradited to Ohio. In May 2008, Jacob was indicted on an additional count of theft from an elderly person of currency valued at more than $25,000. On June 2, 2008, Detective McCoy sought and was granted a second search warrant to access the information stored on the electronic devices seized at Jacob's home, which had been transported to the Miami Township Police Department.

{¶ 6} On April 25, 2008, Jacob filed a motion to suppress the evidence seized in the search of his California home and vehicles on the bases that the affidavit in support of the warrant had failed to establish probable cause and that the warrant had been unlawfully executed. On June 25, 2008, Jacob filed a supplemental motion to suppress directed to any information retrieved from the electronic devices confiscated from his home. Jacob's arguments for the suppression of evidence recovered from the electronic devices were premised on his belief that the initial search warrant, under which those devices were confiscated, was invalid, and that the facts alleged in the affidavit in support of the second warrant were stale.

{¶ 7} Following a hearing, the trial court overruled the motions to suppress evidence. The trial court recognized that the magistrate who issued the search warrant had violated Crim.R. 41 by issuing a warrant to be served outside of the jurisdiction of the Miamisburg Municipal Court. But it concluded that this error did not constitute a fundamental violation of Jacob's constitutional rights, because probable cause had been demonstrated and another court with proper jurisdiction

would have granted the warrant if the police had sought it there. One week later, the trial court reconsidered its decision on its own initiative and concluded that it "needed to refine but not ultimately change" its ruling on the motions to suppress. The trial court concluded that the search warrant, in fact, had *not* been supported by probable cause; although Detective McCoy's affidavit "certainly provided probable cause that Mr. Jacob had committed a crime involving Paul Schultz's Hummel collection * * * [it was] devoid of information that evidence of any crime involving the Hummel collection would be found in the San Mateo County, California home to be searched." The trial court further concluded; however, that the "good-faith exception" applied to prevent the exclusion of the evidence obtained in the search because the officers who obtained and executed the warrant objectively and reasonably relied upon it. Thus, although the trial court concluded that probable cause had been lacking, it denied Jacob's motions to suppress evidence.

{¶ 8} After his motions to suppress were overruled, Jacob entered pleas of no contest on both counts of theft and was found guilty as charged. He was sentenced to community-control sanctions.

{¶ 9} Jacob raises two assignments of error on appeal, which we will address together.

## II

{¶ 10} Jacob's assignments of error state:

{¶ 11} "The trial court erred in overruling Mr. Jacob's motions to suppress as the police and court violated Mr. Jacob's constitutional rights, there was no good-faith exception to the exclusionary rule, and evidence subsequently obtained was fruit of the poisonous tree.

{¶ 12} "The trial court erred in overruling Mr. Jacob's motion to suppress as the search warrant was not based on probable cause and contained facts stale and remote."

{¶ 13} Jacob asserts that his motions to suppress should have been granted because the Miamisburg Municipal Court did not have jurisdiction to issue a search warrant that would be executed in California. He also contends that although the trial court properly found that the search warrant was not based on probable cause, it erred in concluding that the evidence seized as a result of the search need not be suppressed or excluded because the officers who obtained and executed the defective warrant acted in good faith.

{¶ 14} The Fourth Amendment to the United States Constitution provides:

{¶ 15} "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

{¶ 16} Section 14, Article I of the Ohio Constitution contains the same language. R.C. 2933.22(A) similarly provides that "[a] warrant of search or seizure shall issue only upon probable cause, supported by oath or affirmation particularly describing the place to be searched and the property and things to be seized."

## A. *Crim.R. 41 Violation*

{¶ 17} Crim.R. 41(A) provides: "A search warrant * * * may be issued by a judge of a court of record to search and seize *property located within the court's territorial jurisdiction* * * *." (Emphasis added.) Crim.R. 41(C) further provides that a warrant shall issue under this rule "only on an affidavit or affidavits sworn to before a judge of a court of record and establishing the grounds for issuing the warrant. The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located. If the judge is satisfied that probable cause for the search exists, he shall issue a warrant identifying the property and naming or describing the person or place to be searched."

{¶ 18} R.C. 2933.21 provides, "A judge of a court of record may, *within his jurisdiction,* issue warrants to search a house or place: (A) For property stolen, taken by robbers, embezzled, or obtained under false pretense; [and] (B) For weapons, implements, tools, instruments, articles or property used as a means of the commission of a crime, or when any of the objects or articles are in the possession of another person with the intent to use them as a means of committing crime." (Emphasis added.)

{¶ 19} The parties and the court agreed that the search warrant issued by the Miamisburg Municipal Court, which was to be executed in California, failed to comply with Crim.R. 41(A) and R.C. 2933.21(A), because the location to be searched was outside the court's jurisdiction. The trial court concluded, however, that the warrant's failure to comply with Crim.R. 41 and R.C. 2933.21 was not a fundamental violation of Jacob's Fourth Amendment rights. The court reasoned that the flaw in the process by which the warrant was obtained did not require suppression of the evidence obtained in the search because the officers acted in good-faith reliance on the warrant. Jacob argues that this error was of constitu-

tional magnitude and that the trial court erred in refusing to suppress the evidence.

{¶ 20} The trial court relied on our decision in *State v. Hardy* (Aug. 28, 1998), Montgomery App. No. 16964, 1998 WL 543368, in rejecting Jacob's argument that the statutory and Crim.R. 41(A) violations required the suppression of the evidence found in his California home. In *Hardy*, a Dayton Municipal Court Judge issued a search warrant for a parcel, then located at Dayton Police Headquarters, but which had been transported there by the police from a Federal Express facility in Miami Township. This court upheld the trial court's conclusion that property is "located," within the meaning of Crim.R. 41(A), in the jurisdiction in which it is originally discovered by the police, and that therefore the Dayton Municipal Court Judge lacked authority under Crim.R. 41(A) and R.C. 2933.21(A) to issue the warrant to search the parcel. We held, however, that "[o]nly a 'fundamental' violation of [Crim.R.] 41 requires automatic suppression, and a violation is 'fundamental' only where it, in effect, renders the search unconstitutional under traditional [F]ourth [A]mendment standards." Id. Any other violation of Crim.R. 41, i.e., a "nonfundamental" violation, "requires suppression only if it prejudiced the suspect in the sense that the search might not have occurred or would not have been as 'abrasive' if Crim.R. 41 had been followed, or if there was evidence of intentional and deliberate disregard for the rule." Id., citing *United States v. Vasser* (C.A.9, 1980), 648 F.2d 507, 510. We concluded that the violation in *Hardy* was nonfundamental because the search warrant was issued by a neutral and detached magistrate upon probable cause, was supported by an affidavit, and described the parcel with particularity, thus satisfying traditional Fourth Amendment standards.

{¶ 21} In *Hardy*, we noted that in *State v. Wilmoth* (1986), 22 Ohio St.3d 251, 22 OBR 427, 490 N.E.2d 1236, the Supreme Court of Ohio adopted the test set forth in *Vasser*, 648 F.2d 507. In *Wilmoth*, the court concluded that an officer's failure to comply with "the Crim.R. 41(C) requirement that a written affidavit be submitted to obtain a search warrant, was not a violation of constitutional magnitude because there had been no evidence of bad faith on the part of the police or prejudice to the defendant, and there had been an urgent need to obtain the warrant." *Hardy*, citing *Wilmoth* at 264, 22 OBR 427, 490 N.E.2d 1236.

{¶ 22} Relying on *Hardy* and *Wilmoth*, the trial court in this case concluded that the Crim.R. 41(A) violation at issue—whereby the magistrate issued a warrant without probable cause to be executed outside the court's jurisdiction—was not fundamental to Jacob's constitutional rights and did not require that the evidence be suppressed. We disagree.

{¶ 23} The concurring opinion in *Hardy* observed that "the police officer conducting the search and seizure was in good faith in believing that he had a

valid warrant, even though in fact he did not," but said further that "[o]nce we allow time for reasonable police officers within this jurisdiction to become acquainted with the territorial limits upon a magistrate's authority to issue search warrants, however, claims of good faith exceptions to the warrant requirement are likely to be unavailing." Id. Judge Wolff, writing for the majority, also noted that "[a]s these pronouncements [concerning extra-territorial searches] are disseminated, it will be more difficult to claim good faith disregard of the limitation contained in Crim.R. 41(A)." Id.

{¶ 24} *Hardy* was decided in 1998, and in that case, the search warrant *was supported by probable cause* to search the parcel in question; the problem was that the parcel, which was present in the city when the search warrant was obtained, had originally been located in another township in the same county. Similarly, in *Wilmoth,* 22 Ohio St.3d at 264, 22 OBR 427, 490 N.E.2d 1236, there was probable cause, the warrant was to be executed in Ohio, and there was an urgent need to obtain the warrant. In Jacob's situation, in 2008, a municipal judge in Ohio issued a warrant without probable cause by which a California police officer searched a California location. Due to the absence of probable cause and the execution of the warrant in another state, the constitutional concerns presented in Jacob's situation are much more "fundamental" than the Crim.R. 41 violation at issue in *Hardy.* Judge Fain's prescient concurrence in *Hardy* observed that "a judge of a court of record in Ohio is not authorized by law to issue a search warrant outside of the judge's jurisdiction and can no more be considered a magistrate for Fourth Amendment purposes than anyone else lacking that authority—be that judge the finest jurist who can be found in a sister state or in a foreign country." The Fourth Amendment requires that a search warrant be issued from a "neutral and detached magistrate." *Johnson v. United States* (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. "No matter how neutral and detached, or generally capable, a self-appointed 'magistrate' may be, anyone other than a public officer authorized by law to issue search warrants cannot * * * be considered a magistrate for Fourth Amendment purposes." *Hardy* (Fain, J., concurring). In other words, a magistrate who acts beyond the scope of his authority ceases to act as a magistrate for Fourth Amendment purposes.

{¶ 25} We agree that in Jacob's situation, a violation of statutory provisions that a judge can issue a valid search warrant only within his or her court's jurisdiction is a fundamental violation of Fourth Amendment principles. As Justice Holmes said in a different context in *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, a line must be drawn somewhere to prevent the Fourth Amendment's guarantee against unreasonable searches and seizures from becoming no more than a "form of words." Crossing

state lines by allowing an Ohio court to determine when California citizens and property are subject to search and seizure crosses this constitutional line. In *Hardy* and *Wilmoth*, at least the court that issued the warrant, the court that had authority to issue it, and the law-enforcement officers were all in Ohio, albeit in different legislatively created venues, and therefore, their actions were subject to Ohio law.[1] Allowing one state's court to determine when property, residences, and residents of another state may be subject to search and seizure would trample the sovereignty of states to determine the procedures by which a warrant may be issued and executed and of their courts to determine the consequences of a failure to follow those laws.[2]

{¶ 26} Because the municipal court's lack of jurisdiction to issue a warrant for an out-of-state search was contrary to Ohio law and was a fundamental violation of Jacob's Fourth Amendment rights, the evidence obtained in the search of Jacob's California house should have been suppressed.

*B. The Applicability of the Good Faith Exception to the Exclusionary Rule*

{¶ 27} The Supreme Court established the "good faith" exception to the exclusionary rule in *United States v. Leon* (1984), 468 U.S. 897, 918–923, 926, 104 S.Ct. 3405, 82 L.Ed.2d 677. In doing so, the Supreme Court declined to apply the exclusionary rule when police reasonably and in good faith relied upon a warrant subsequently declared to be invalid, because excluding evidence under such circumstances would not deter police misconduct. Id. at 922, 104 S.Ct. 3405, 82 L.Ed.2d 677. The good-faith inquiry established in *Leon* is confined to the objectively ascertainable question of whether a reasonably well-trained officer

1. The state relies on *California v. Fleming* (1981), 29 Cal.3d 698, 175 Cal.Rptr. 604, 631 P.2d 38, in arguing that Officer Alcaraz had no reason to suspect that the Ohio warrant was not valid because, in California, a magistrate is permitted to issue a warrant to be served outside the magistrate's jurisdiction if the warrant relates to a crime committed within the jurisdiction. First, *Fleming* is, as are so many things, unique to California, where magistrates act independently from the jurisdiction of the court on which they sit. Id. at 703, 175 Cal.Rptr. 604, 631 P.2d 38, fn. 3. Second, the statutory sections applicable in *Fleming* require that the warrant be issued to an officer in the issuing magistrate's county, even if they do not specify that the search be executed in the same county. Moreover, we note that, like in *Hardy* and *Wilmoth*, all the law-enforcement bodies and magistrates at issue in *Fleming* were within the same state. *Fleming* does not hold—or even suggest—that the issuance of warrants across state lines is permissible.

2. {¶ a} We note, for example, that New Jersey does not accept the good-faith exception to the warrant requirement. See *New Jersey v. Novembrino* (1987), 105 N.J. 95, 145–158, 519 A.2d 820 (rejecting under New Jersey's state constitution the federal good-faith exception to the exclusionary rule for search warrants issued in good faith but without probable cause). Ohio has a reporter's shield law, some states do not; should such a state be permitted to execute its warrant in Ohio?

{¶ b} We make no similar suggestion concerning federal authority. See, e.g., Fed.R.Crim.P. 41.

would have known that the search was illegal despite the issuance of a warrant; subjective beliefs of the officer are not to be considered. *Leon,* 468 U.S. at 922, 104 S.Ct. 3405, 82 L.Ed.2d 677, fn. 23; *State v. Klosterman* (1996), 114 Ohio App.3d 327, 332, 683 N.E.2d 100. The Supreme Court now prefers to discuss this issue in terms of an officer's "objectively reasonable reliance" on a warrant, commenting that the term "good faith" has perhaps been confusing. *Herring v. United States* (2009), 555 U.S. ——, 129 S.Ct. 695, 172 L.Ed.2d 496. Notably, both *Leon* and *Herring* involved warrants issued and executed within a single state.

{¶ 28} As recounted above, the trial court found that probable cause for the warrant had been lacking because, although Detective McCoy's affidavit "certainly provided probable cause that Mr. Jacob had committed a crime involving Paul Schultz's Hummel collection * * * [it was] devoid of information that evidence of any crime involving the Hummel collection would be found in the San Mateo County, California home to be searched." The trial court found, however, that the good-faith exception to the exclusionary rule applied because Detective McCoy apparently knew that Jacob lived at 74 Loma Vista in Burlingame, California, when he sought the search warrant, even though his affidavit did not contain this fact or state the basis for this knowledge. The court further concluded that since Officer Alcaraz provided the information to Detective McCoy concerning Jacob's address, Officer Alcaraz relied in good faith upon the search warrant from the Miamisburg Municipal Court when he executed it.

{¶ 29} Our conclusion that the trial court's issuance of a search warrant to be executed in another state was a fundamental constitutional violation renders the trial court's good-faith analysis peripheral. A fundamental violation of a defendant's constitutional rights requires automatic suppression of the evidence. *Wilmoth,* 22 Ohio St.3d at 262, 22 OBR 427, 490 N.E.2d 1236; *Hardy.* See also *Vasser,* 648 F.2d at 510; *United States v. Luk* (C.A.9, 1988), 859 F.2d 667, 671. The *Wilmoth* and *Hardy* holdings that some violations of the Fourth Amendment, Crim.R. 41, and R.C. 2933.21(A) are fundamental violations are analogous to court rulings that certain errors in trial court proceedings are so foundational and structural that they cannot be ignored or overcome by a postconviction finding that a defendant would have been found guilty notwithstanding the error. "Structural error affects 'the entire conduct of the trial from beginning to end' as well as 'the framework within which the trial proceeds.' Such errors 'defy analysis by "harmless error" standards.' " *State v. Esparza* (1996), 74 Ohio St.3d 660, 661, 660 N.E.2d 1194, quoting *Arizona v. Fulminante* (1991), 499 U.S. 279, 307–308, 111 S.Ct. 1246, 113 L.Ed.2d 302. Examples of structural errors include the complete denial of counsel, a biased trial judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public

trial, and a defective reasonable-doubt instruction. See *State v. Sessler*, 119 Ohio St.3d 9, 2008-Ohio-3180, 891 N.E.2d 318, at ¶ 8 (O'Donnell, J., dissenting). The fact that a defendant is denied counsel, for example, or an impartial judge, or the right to a public trial, is not cured by the good faith of the prosecuting authorities or the lack of recklessness or intent to violate the defendant's rights. Likewise, we do not believe that a search warrant issued by a court wholly lacking authority to do so may be cured when the officers who obtained and executed the warrant did so in subjective good faith, but failed to recognize that the court was without jurisdiction.

{¶ 30} In holding that the magistrate's lack of authority to issue the search warrant was a fundamental constitutional violation that could not be cured, we do not question that the Miamisburg judge who issued the warrant to search Jacob's house is highly competent, as well as neutral and detached from law enforcement. Likewise, in holding that the trial court erred in applying the good-faith exception, we do not imply that the police officers acted in bad faith. Even if a *Leon* analysis were appropriate, it was not "objectively reasonable" for either officer to believe that the Miamisburg Municipal Court judge could issue a warrant to be validly executed in California. Extension of the "objectively reasonable" exception to this situation would subsume the Fourth Amendment's warrant requirement. Indeed, if items "can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the Fourth Amendment declaring his right to be secure against such searches and seizures is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution." *Weeks v. United States* (1914), 232 U.S. 383, 393, 34 S.Ct. 341, 58 L.Ed. 652.

{¶ 31} The evidence obtained pursuant to the second search warrant, which was directed to computers and business records, was uncovered as a result of the earlier unlawful search of Jacob's home. Accordingly, that evidence was "fruit of the poisonous tree" and must also be suppressed. *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

{¶ 32} For the foregoing reasons, the trial court erred in refusing to suppress the evidence obtained in the search of Jacob's home or in the subsequent search of the electronic equipment. The assignments of error are sustained.

## III

{¶ 33} The judgment of the trial court is reversed, and the matter is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

GRADY, J., concurs.

FRENCH, J., concurs in judgment only.

JUDITH L. FRENCH, Tenth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.

GRADY, Judge, concurring.

{¶ 34} The warrant that authorized the search and seizure of evidence performed in the present case was an invalid warrant because probable cause for its issuance was lacking, as the trial court found. Therefore, evidence seized pursuant to the warrant was subject to suppression by the court. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. However, because the purpose of the exclusionary rule is not to punish errors of law by the magistrate who issued the warrant but instead to deter and punish unlawful police conduct in procuring and/or executing the warrant, suppression of evidence seized pursuant to an invalid warrant is not justified when those police officers acted in objectively reasonable reliance on its validity. *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677.

{¶ 35} *Leon* "eschew[ed] inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant." Id. at 922, 104 S.Ct. 3405, 82 L.Ed.2d 677, fn. 23. "Accordingly, [the] good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." Id. In resolving that inquiry, "[i]t is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable cause determination." Id. at 24.

{¶ 36} I agree that no reasonably well-trained police officer would believe that an Ohio judge is authorized to warrant a search and seizure in California. That the officers' conduct was not objectively reasonable finds further and more specific support from a defect on the face of the warrant implicating that same error. "[D]epending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon,* 468 U.S. at 923, 104 S.Ct. 3405, 82 L.Ed.2d 677, 699, citing *Massachusetts v. Sheppard* (1984), 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737.

{¶ 37} In *Sheppard,* the affiant detective who later performed the search had made out a proper affidavit for a warrant to seize certain evidence of a homicide, but was able to find only a warrant form for seizure of controlled substances.

The issuing judge mistakenly assured the affiant that the warrant had been sufficiently revised to conform to the affidavit. The warrant was invalidated following a search and seizure because the warrant referred to items as to which probable cause had not been shown in the affidavit. The Supreme Court concluded in *Sheppard* that the officers nevertheless reasonably believed that the search they conducted was authorized by a valid warrant, in view of the fact that "the officers in this case took every step that could reasonably be expected of them." 468 U.S. at 989, 104 S.Ct. 3424, 82 L.Ed.2d 737.

{¶ 38} In the present case, the affidavit submitted to a judge of the Miamisburg Municipal Court by Detective Patrick McCoy identified the place to be searched as 74 Loma Vista Drive, Burlingame, San Mateo County, California. The warrant the judge then signed charged Detective McCoy to search that place "within this court's territorial jurisdiction." A court's territorial jurisdiction is its power over cases arising in or involving persons within a defined geographical unit. Because the specified location in California is manifestly not one within the territorial jurisdiction of the Miamisburg, Ohio, Municipal Court, the warrant was facially deficient. Furthermore, because the defect is so egregious, a reasonably well-trained officer would have known that the search the warrant charged Detective McCoy to perform was therefore illegal, despite the issuing judge's authorization. Therefore, the trial court erred in finding that the officers who executed the invalid warrant nevertheless acted in objectively reasonable reliance on its validity. *Leon.*

{¶ 39} Unlike in *Sheppard*, there are no extenuating circumstances on which the officers who executed the warrant could reasonably rely to believe that the defect had been corrected, or perhaps was not a defect at all. The state suggests that the California officer who executed the warrant might not have believed there was a defect, because California warrant procedure permits warrants for extra-territorial searches, at least within that state. That contention is unpersuasive, especially with respect to the acts of the Miamisburg officer who procured the defective warrant and could not reasonably have believed that it validly authorized a search in California. *Leon* instructs that its objective-reasonableness test applies not only to the officers who executed a warrant, but also to other officers who procured it.

{¶ 40} I would reverse on the foregoing analysis.