[Cite as *Cincinnati Ins. Co. v. Jacob*, 2013-Ohio-2573.]


**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**


CINCINNATI INSURANCE COMPANY

      Plaintiff-Appellee

v.

KEVIN E. JACOB


      Defendant-Appellant

Appellate Case No.    25407

Trial Court Case No.   09-CV-10441

(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

# O P I N I O N

Rendered on the 21st day of June, 2013.

. . . . . . . . . . .

MATTHEW M. SCHMIDT, Atty Reg. No. 0072898, 130 West Second Street, Suite 1850, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee


KEVIN E. JACOB, Inmate No. 09A0765, Orleans Correctional Institution, 35-31 Gaines Basin Road, Albion, New York 14411-9199
     Defendant-Appellant-*pro se*

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendant-Appellant, Kevin Jacob, appeals pro se from a summary judgment rendered in favor of Plaintiff-Appellee, Cincinnati Insurance Company (CIC). In support of his appeal, Jacob contends that the trial court or plaintiff's attorney erred in failing to serve the motion for summary judgment upon Jacob. Jacob further contends that the trial court did not have jurisdiction over him because he was a nonresident of Ohio, and the corporate veil was never pierced. In addition, Jacob maintains that either estoppel or res judicata applies to this action, due to a prior judgment between the parties. Jacob also contends that CIC acted in a commercially unreasonable manner in valuing the property that Jacob allegedly converted. Finally, Jacob contends that he was denied due process due to his incarceration in New York and the trial court's refusal to accede to his requests to be heard.

**{¶ 2}** We conclude that no error occurred in the trial court, and that the court properly rendered summary judgment in favor of CIC. Jacob failed to respond to the motion for summary judgment. In addition, the record shows no dispute of material facts and that CIC was entitled to judgment as a matter of law. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 3}** In May or June 2006, Paul Schultz contacted the defendant, Kevin Jacob, to arrange the sale of a portion of Schultz's collection of Hummel figurines. Schultz had learned from mutual friends that Jacob operated an internet auction site.

**{¶ 4}** After the two men had spoken several times, Jacob came to Schultz's home in October 2006 to take pictures of the items that Schultz wanted to sell. Jacob then returned on

November 18, 2006, loaded about ten boxes of figurines into a trailer bearing the logo "MYPORTS.com," and returned to Michigan. Over the next few months, Schultz and Jacob talked occasionally, and Jacob indicated that he had prospects interested in buying the pieces. Subsequently, on June 14, 2007, Schultz sent Jacob another rare International Hummel figurine, but he was not able to contact Jacob after that time. Schultz never received any proceeds from any sales, nor did Jacob return the figurines.

{¶ 5} In total, Schultz entrusted Jacob with 315 figurines that Jacob was supposed to sell over the internet. After learning that Jacob had left Michigan and might be in California, Schultz filed a complaint with the police in December 2007. Schultz also filed a proof of loss form with his insurer, CIC, in January 2008, valuing the Hummel collection at between $200,000 and $300,000. After investigating, CIC paid Schultz $256,307 on January 22, 2008, and received an assignment of Schultz's rights to recover against Jacob.

{¶ 6} In February 2008, Jacob was indicted by the Montgomery County Grand Jury on one count of theft from an elderly person in the amount of $100,000 or more. *See State v. Jacob*, 185 Ohio App.3d 408, 2009-Ohio-7048, 924 N.E.2d 410, ¶ 4 (2d Dist.). After being extradited to Ohio from California, Jacob was indicted on an additional count of theft from an elderly person in the amount of more than $25,000. *Id.* at ¶ 5. Jacob pled no contest to the charges and appealed from the denial of his motion to suppress evidence. *Id.* at ¶ 8. We reversed the trial court's ruling because the Miamisburg Municipal Court lacked jurisdiction to issue the search warrant that was executed in California. *Id.* at ¶ 26-32.

{¶ 7} On remand, Jacob pled no contest to the charges, and was sentenced to community control. Jacob's case was immediately terminated and his community control status

was also terminated, due to the fact that Jacob was currently incarcerated in New York on unrelated charges. *State v. Jacob*, Montgomery C.P. No. 2008 CR 00401 (May 11, 2010).

{¶ 8} Subsequently, in December 2009, CIC filed a civil action against Jacob, alleging that he had converted property owned by Schultz in the amount of $256,307. CIC also claimed that Jacob was civilly liable for criminal acts, pursuant to R.C. 2307.60. Jacob was properly served at the address of the correctional facility in New York (Orleans Correctional Facility). Jacob then filed a pro se answer to the complaint, denying the allegations. Jacob did not, however, assert any defenses in his answer. All pertinent notices during the case, including an entry setting deadlines for motions for summary judgment, responses to motions for summary judgments, and so on, were sent to Jacob at his address at the Orleans Correctional Facility.

{¶ 9} CIC filed a motion for summary judgment in August 2012, and attached a certificate of service, indicating that a copy of the motion had been sent to Jacob at his address at the Orleans Correctional Facility. The motion was supported by affidavits from the following individuals: Schultz; a CIC claims superintendent; and the regional manager of CIC's special investigating unit. The affidavits outlined the facts of the case, and indicated that CIC had paid $256,307 to its insured and had obtained the remaining Hummel figures from the police after the conclusion of the case. According to CIC, it had been able to sell the figurines for about $14,126 in salvage value.

{¶ 10} Jacob did not file a response to the motion for summary judgment. Consequently, the trial court filed a decision on September 12, 2012, rendering summary judgment in favor of CIC in the amount of $242,180.68, which was the amount CIC paid out, less the salvage value. Jacob appeals from the judgment in favor of CIC.

## II.  Did the Court or Attorney Err in Failing to Serve Jacob

## with the Summary Judgment Motion?

{¶ 11}    Jacob's First Assignment of Error, quoted verbatim, states that:

Whether the Court and/or Attorney for Plaintiff Erred in Failing to Serve "Plaintiff's Motion for Summary Judgment" Upon Defendant.

{¶ 12}    Under this assignment of error, Jacob contends that he was never served with CIC's motion for summary judgment.   As a preliminary matter, we note that Jacob never raised this point in the trial court after receiving the decision granting summary judgment in favor of CIC, nor did Jacob ask the trial court to vacate its summary judgment.

{¶ 13}    The matters alleged by Jacob are not of record; all that is in the record is the certificate of service from CIC's attorney, indicating that he served Jacob with the summary judgment motion.   In *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), the Supreme Court of Ohio held that "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter."   *Id*. at paragraph one of the syllabus.   In addition, "[a]n appellate court may not assume as true or even consider facts alleged in a party's brief or attachments thereto." (Citation omitted.) *Phung v. Waste Management, Inc.*, 23 Ohio St.3d 100, 102, 491 N.E.2d 1114 (1986).

{¶ 14}    Furthermore, Jacob is incorrect in contending that the trial court is required to serve motions on parties.   "The service of pleadings, written motions, and other papers, then, is a task imposed by the Civil Rules on the attorneys. A court, on the other hand, generally acts and speaks only through its journal by means of orders."   (Citations omitted.)   *Ohio Valley*

*Radiology Associates, Inc. v. Ohio Valley Hosp. Assn.*, 28 Ohio St.3d 118, 124, 502 N.E.2d 599 (1986).

**{¶ 15}**   Civ.R. 5(B)(2)(c) provides that service may be made by "mailing it to the person's last known address by United States mail, in which event service is complete upon mailing * * *."   According to the only facts of record in the case before us, service of the summary judgment motion was made in compliance with Civ.R. 5(B)(2)(c).   Accordingly, the First Assignment of Error is without merit and is overruled.

### III.   Did the Court Lack Jurisdiction over Jacob?

**{¶ 16}**   Jacob's Second Assignment of Error, quoted verbatim, states as follows:

Whether Court Has Personal and/or Subject Matter Jurisdiction over Defendant-Appellant[,] a Nonresident of Ohio Further Protected as the Corporate Veil Was Never Pierced.

**{¶ 17}**   Under this assignment of error, Jacob appears to argue two points: (1) that CIC should have filed a lawsuit against an entity named MyPorts or AuctionPorts; and (2) that the trial court lacked personal jurisdiction over Jacob because he is a resident of New York.   As an initial matter, we note that Jacob apparently lived in Michigan when he traveled to Ohio to solicit business, and then moved to California, where he was arrested and extradited to Ohio.   Jacob's current residence in New York is due to his incarceration there on an unrelated matter.

**{¶ 18}**   "[I]n order to render a valid personal judgment, a court must have personal jurisdiction over the defendant.   Personal jurisdiction may only be acquired by service of process upon the defendant, the voluntary appearance and submission of the defendant or his legal

representative, or by an appearance that waives * * * certain affirmative defenses, including jurisdiction over the person under the Rules of Civil Procedure." *Abuhilwa v. O'Brien*, 2d Dist. Montgomery No. 21603, 2007-Ohio-4328, ¶ 14, citing *Maryhew v. Yova*, 11 Ohio St.3d 154, 464 N.E.2d 538 (1984).

{¶ 19}   Civ.R. 12(B) provides that the defense of lack of jurisdiction over the person shall be asserted in the responsive pleading if one is required, or may be made by motion. Civ.R. 12(H)(1) further states that "[a] defense of lack of jurisdiction over the person * * * is waived * * * (b) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(A) to be made as a matter of course."

{¶ 20}   Jacob did not raise the defense of lack of personal jurisdiction in his answer, which was the responsive pleading to CIC's complaint, nor did he file a motion with the trial court asserting a lack of personal jurisdiction.   As a result, Jacob has waived the issue.

{¶ 21}   Jacob also failed to properly raise the issue of failure to join a party.   Under Civ.R. 12(B), the defense of failure to join a party must also be asserted in a responsive pleading or by motion.   Civ.R. 12(H)(2) further provides that the defense of failure to join an indispensable party "may be made in any pleading permitted or ordered under Rule 7(A), or by motion for judgment on the pleadings, or at the trial on the merits."   Again, Jacob waived the issue by failing to timely raise it.  *Mikles v. Sears, Roebuck & Co.*, 2d Dist. Montgomery No. 20057, 2004-Ohio-1024, ¶ 6.

{¶ 22}   Accordingly, Jacob's Second Assignment of Error is without merit and is overruled.

IV.    Do the Doctrines of Estoppel or Res Judicata Apply?

**{¶ 23}**    Jacob's Third Assignment of Error, quoted verbatim, states as follows:

Whether Plaintiff is Estopped and/or Res Judicata Applies.

**{¶ 24}**    Under this assignment of error, Jacob appears to argue: (1) that some type of "agreement" supersedes CIC's claim; and (2) that a prior adjudication "clearly established" that Jacob has no liability to the original owners or to a third-party claim.

**{¶ 25}**    The record submitted to the trial court does not contain evidence of any agreement between the parties.    In fact, Schultz's affidavit indicates that Jacob asked him to sign an agreement relating to the sale of the Hummel figurines, and that he refused to sign any agreement.

**{¶ 26}**    Jacob has attached various exhibits, including "Exhibit JJ" to his brief.    Exhibit JJ purports to be Jacob's response to requests for admissions, and it does refer to a "consignment contract/agreement."    According to this document, Jacob took possession of the Hummel figurines pursuant to a consignment agreement.    *See* Exhibit JJ, p. 1.

**{¶ 27}**    The exhibit in question is not part of the trial court record.    As was noted, we cannot consider matters that are not part of the trial court record, and decide the appeal based on the new matter.    *Ishmail*, 54 Ohio St.2d 402, at paragraph one of the syllabus, 377 N.E.2d 500.

**{¶ 28}**    The prior adjudication that Jacob references in his brief appears to be the criminal action in Montgomery County Common Pleas Court, where Jacob pled no contest to charges of having stolen property from elderly persons.    In this regard, Jacob focuses on our appellate opinion in the case, which indicates that Schultz had entrusted Jacob with 313 Hummel figurines, and that police officers had confiscated 353 Hummel figurines from a residence on

Loma Vista Drive in Burlingame, California. *Jacob*, 185 Ohio App.3d 408, 2009-Ohio-7048, 924 N.E.2d 410, at ¶ 3-4. According to Jacob, this means that CIC was unjustly enriched. Jacob also contends that the property was returned in the same condition that it was in when he obtained it from Schultz, therefore eliminating any claim for conversion or loss.

{¶ 29} Again, these arguments were not presented to the trial court, and we cannot consider new material that was not presented to the trial court. Furthermore, res judicata and estoppel are affirmative defenses that are waived if they are not pled in the trial court. *See, e.g.*, Civ.R. 8(C), and *Denune v. City Of Springfield*, 2d Dist. Clark No. 01CA0097, 2002 WL 1393687, *3 (June 28, 2002).

{¶ 30} We also note that res judicata and estoppel do not apply. "Res judicata is a doctrine of judicial preclusion. There are two theories on which it operates, claim preclusion (estoppel by judgment) and issue preclusion (collateral estoppel)." *State v. Harris*, 2d Dist. Montgomery No. 24739, 2012-Ohio-1853, ¶ 14, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995). " 'Both theories of res judicata are used to prevent relitigation of issues already decided by a court, or matters that should have been brought as part of a previous action.' " *Id.*, quoting *Chagrin Falls v. Geauga Cty. Bd. of Commrs.*, 11th Dist. Geauga No.2003-G-2530, 2004-Ohio-5310, ¶ 28. (Other citation omitted.) "When a final judgment is rendered by a court of competent jurisdiction, claim preclusion 'bars all claims that were litigated in a prior action as well as all claims which might have been litigated in that action.' " *Harris* at ¶ 14, citing *Deaton v. Burney*, 107 Ohio App.3d 407, 410, 669 N.E.2d 1 (2d Dist.1995). (Other citation omitted.) "In other words, 'the doctrine of *res judicata* requires [a party] to present every ground for relief in the first action, or be forever barred from asserting it.' " *Id.*, citing

*Grava* at 229. (Other citation omitted.)

**{¶ 31}** In *State Farm Mut. Auto. Ins. Co. v. Hill*, 2d Dist. Greene No. 2006 CA 24, 2007-Ohio-581, we rejected a defendant's attempt to use the doctrine of res judicata to bar a subsequent civil action brought by an insurer to recover damages paid to the crime victim. We noted that "[t]he prior criminal action was brought by the State of Ohio against Hill. Neither State Farm nor the victim, State Farm's subrogor, were parties to the criminal action. Further, no privity existed between the State of Ohio, the plaintiff in the criminal case, and either the victim or State Farm, the plaintiff in the civil action." *Id.* at ¶ 9, citing *Manley v. Refus Club Mozambique, Inc.*, 111 Ohio App.3d 260, 263, 675 N.E.2d 1342 (3d Dist.1996). We did note that the defendant could ask the court in his criminal case to credit any amounts paid to the insurer against the restitution ordered in the criminal case. *Id.* at ¶ 12.

**{¶ 32}** The same reasoning applies to the case before us, and precludes the application of collateral estoppel or res judicata. We also note that the judge presiding over Jacob's criminal case did not order restitution. *See Jacob*, Montgomery C.P. No. 2008 CR 00401 (May 11, 2010).

**{¶ 33}** Based on the preceding discussion, Jacob's Third Assignment of Error is overruled.

### V. Did CIC Act in a Commercially Unreasonable Manner?

**{¶ 34}** Jacob's Fourth Assignment of Error, quoted verbatim, states that:

Whether the Plaintiff Acted Commercially Unreasonable [sic] in Valuing

Illegally Claimed Property Solely by Guesswork Alone at $242,180.68 and Then

Salvaging the Same Said Property for $14,126.32[,] an 82% Loss in Less than 45 Days.

**{¶ 35}** As an initial matter, we note that Jacob does not offer any argument nor does he present any citations of authority to support this assignment of error. He has, therefore, failed to comply with appellate rules.

**{¶ 36}** App.R. 16(A)(7) requires appellants to include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) further provides that "[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."

**{¶ 37}** In view of the above authority and Jacob's failure to submit appropriate argument and authorities, we conclude that Jacob has waived the Fourth Assignment of Error. *See, e.g.*, *Hamad v. Hamad*, 10th Dist. Franklin No. 12AP-617, 2013-Ohio-2212, ¶ 25, and *Am. Gen. Fin. Servs., Inc. v. Mosbaugh,* 2d Dist. Montgomery No. 24575, 2011-Ohio-5557, ¶ 11.

**{¶ 38}** In *Mosbaugh*, we noted that although the appellant was proceeding pro se, such litigants " 'are presumed to know the law and correct procedure, and are held to the same standard as other litigants.' " (Citation omitted.) *Id.* at ¶ 12. We also observed that "[w]e cannot give Appellant special treatment in this appeal and craft arguments and assignments of error that he has failed to create himself." *Id.* Nonetheless, we went on to briefly discuss the only potential issue that could have been presented. *Id.* Taking the same approach here, the

only issue that could have been raised is whether the trial court erred in rendering summary judgment on behalf of CIC.

**{¶ 39}** "A trial court may grant a moving party summary judgment pursuant to Civ.R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." (Citation omitted.) *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999). "We review summary judgment decisions de novo, which means that we apply the same standards as the trial court." (Citations omitted.) *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.)

**{¶ 40}** Based on the evidence submitted to the trial court, we find no error in the decision to render summary judgment in favor of CIC. The submitted evidence indicates the following facts: CIC's insured, Schultz, sustained a loss in the amount of $256,307, based on Jacob's actions; CIC paid Schultz that amount and received an assignment of his rights against Jacob; CIC obtained the remaining Hummel figures from the police after the conclusion of the criminal case; and CIC sold the figurines for about $14,126 in salvage value. The affidavit of CIC's claims superintendent also states that she spent numerous hours researching the value of the Hummel figurines. In view of these undisputed facts, the trial court properly awarded CIC the amount it had expended, minus the salvage value.

**{¶ 41}** Accordingly, the Fourth Assignment of Error is overruled.

VI. Was Jacob Denied Due Process?

**{¶ 42}** Jacob's Fifth Assignment of Error states, quoted verbatim, that:

Whether Jacob Was Denied Due Process as He Is Currently Incarcerated in New York State and Neither Plaintiff Nor Court Acceded to His Reasonable Requests to be Heard, in this Matter and/or Afforded Minimal Access to the Statutes Applicable Herein?

**{¶ 43}** Under this assignment of error, Jacob seems to be complaining about the fact that the trial court never called him for pre-trial or scheduling conferences, even though he purportedly informed the court of how he could be reached by telephone in the penal institution. The trial court record fails to reflect any such notices from Jacob to the trial court.

**{¶ 44}** What the record does indicate is that Jacob was sent notices of all pertinent matters by the trial court, including the deadlines for filing summary judgment motions and responding to such motions. The trial court also did not rule on the motion for summary judgment until two weeks after the deadline for filing responses to the motion had passed.

**{¶ 45}** We have held that "a Fourteenth Amendment due process right of physical access to the courts has not been extended to prisoners." *Trammell v. Powell*, 2d Dist. Montgomery No. 23832, 2011-Ohio-2978, ¶ 6, citing *Shepard Grain Co. v. Creager*, 160 Ohio App.3d 377, 2005-Ohio-1717, 827 N.E.2d 392, ¶ 17 (2d Dist.). In *Shepard Grain Co.*, we found no abuse of discretion in the trial court's decision not to transport a prisoner to court for trial. *Shepard Grain Co.* at ¶ 19. We did conclude that:

However, as to Creager's motion to be present via telephone for the hearing, we cannot reach the same result. When prisoners are involved in civil

actions in courts and the court does not find it appropriate to transport the prisoner to the courthouse, a trial court should consider innovative, alternative ways for the prisoner to participate in the action, such as telephone conference calls, rather than rendering judgment against the prisoner, especially if the prisoner suggests an alternative means for participation. (Citations omitted.) *Id.* at ¶ 24.

{¶ 46} The hearing in *Shepard* was a hearing before a magistrate to decide the issue of whether the defendant owed money to the plaintiff. *Id.* at ¶ 3. Although the case before us also involves a dispute over a debt, it does not involve a refusal to transport a prisoner to court for a trial or scheduled evidentiary hearing. Instead, the trial court simply established deadlines pertaining to summary judgment motions without Jacob's input.

{¶ 47} The trial court established the deadlines in June 2012, and gave the parties ample time to both file and respond to the motions. In addition, the court sent Jacob a copy of its order. Under the circumstances, we find no error on the part of the trial court.

{¶ 48} Accordingly, the Fifth Assignment of Error is overruled.

## VII.  Conclusion

{¶ 49} All of Jacob's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FAIN, P.J. and FROELICH, J., concur.

Copies mailed to:

Matthew M. Schmidt
Kevin E. Jacob
Hon. Timothy N. O'Connell