[Cite as *Thompson v. Thompson*, 2017-Ohio-8192.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CRAIG A. THOMPSON | : | |
| | : | |
| Appellant-Respondent | : | Appellate Case No. 27394 |
| | : | |
| v. | : | Trial Court Case No. 2015-DM-288 |
| | : | |
| THUYVI THOMPSON | : | (Domestic Relations Appeal from |
| | : | Common Pleas Court) |
| Appellee-Movant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of October, 2017.

. . . . . . . . . . .

CRAIG THOMPSON, #721-446, P.O. Box 120, Lebanon, Ohio 45036
    Pro Se, Appellant-Respondent

THOMAS SCHIFF, Atty. Reg. No. 0039881, 500 Lincoln Park Boulevard, Suite 216, Kettering, Ohio 45429
    Attorney for Appellee-Movant

. . . . . . . . . . . . .

HALL, P.J.

{¶ 1} Craig Thompson appeals pro se from a judgment of the domestic-relations court giving custody of his two children to their mother, Thuyvi Thompson, Craig's former wife.[1] Finding no error, we affirm.

## I. Background

{¶ 2} After eight years of marriage, Craig and Thuyvi were divorced in September 2015. Under their separation agreement, Craig was named the residential parent of their children. In December 2015, Craig was found guilty of complicity to commit burglary and sent to prison to serve a mandatory six-year sentence. We affirmed his conviction. *See State v. Thompson*, 2d Dist. Montgomery No. 26954, 2016-Ohio-7521. The children began living with Thuyvi.

{¶ 3} In September 2016, Thuyvi moved for custody of the children, and a hearing was set for November 4, 2016 before a magistrate. Before the hearing, Craig filed several motions. One asked the court to allow Crystal Reed, his mother and attorney-in-fact, to appear on his behalf. In another motion, Craig asked the court to issue subpoenas on his behalf for the hearing. Present at the hearing were Thuyvi and Reed. The magistrate did not permit Reed to represent Craig, saying that it is inappropriate for an attorney-in-fact to represent a party before a court. Thuyvi was the only witness to testify. Craig, imprisoned, did not attend.

{¶ 4} On November 14, the magistrate issued a written decision. She overruled

---

[1] On July 25, 2017, Thompson filed a "Motion to Set Aside Magistrates Decision," arguing that we have failed to comply with App.R. 11.2(C)(3) and (C)(5). But App.R. 11.2(C) does not apply, as the appealed order does not concern the termination of parental rights. Thompson's motion is denied.

each of Craig's motions. The magistrate then sustained Thuyvi's motion for custody, naming her the children's residential parent and legal custodian. The magistrate did not enter an order as to parenting time. The magistrate also ordered Craig to pay child support of $15 each month for each child. On November 30, the trial court adopted the magistrate's decision, finding no facial errors and that no objections to the decision had been filed.

{¶ 5} A week later, on December 6, 2016, Craig filed a motion asking the court for an extension of time to file objections and he also filed his objections. On December 21, the trial court entered a judgment overruling Craig's objections as untimely. Attached to Craig's objections was the "Sworn statement of Craig Thompson." He told the court that he wanted the statement to be considered his testimony in the matter. On Thuyvi's motion, the court struck the statement from the record.

{¶ 6} Craig appealed.

## II. Analysis

{¶ 7} Craig assigns seven errors to the trial court. The first alleges that the magistrate erred by naming Thuyvi the children's residential parent and legal guardian. The second alleges that the magistrate erred by not issuing subpoenas on Craig's behalf. The third alleges that the court erred by not ordering parenting time or visitation. The fourth assignment of error alleges that the court erred by setting child support at more than Craig earns. The fifth alleges that the magistrate erred by denying his request to be present at the hearings. The sixth alleges that the court erred by overruling Craig's objections to the magistrate's decision. And the seventh assignment of error alleges that the trial court erred by striking Craig's sworn statement.

**{¶ 8}** We begin with the sixth assignment of error.

A. *Craig's objections to the magistrate's decision*

**{¶ 9}** Craig argues in the sixth assignment of error that the trial court erred by overruling his objections to the magistrate's decision. Under Civ.R. 53, "[a] party may file written objections to a magistrate's decision within fourteen days of the filing of the decision." Civ.R. 53(D)(3)(b)(i). A court may consider untimely objections but only "*so long as the trial court has not entered a final judgment.*" (Emphasis sic.) *Learning Tree Academy, Ltd. v. Holeyfield*, 12th Dist. Butler No. CA2013-10-194, 2014-Ohio-2006, ¶ 15, fn. 2. After it has entered a final judgment, the court cannot consider objections. *See Murray v. Goldfinger, Inc.*, 2d Dist. Montgomery No. 19433, 2003-Ohio-459, ¶ 5, citing *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 379, 423 N.E.2d 1105 (1981). Rather, the objecting party must seek relief from the final judgment through a motion for relief from judgment under Civ.R. 60(B). *Id.* at ¶ 5; *Learning Tree* at ¶ 16.

**{¶ 10}** The November 14, 2016 Magistrate Decision contains specific language that pursuant to Civ. R. 53 objections must be filed within 14 days of the filing of the decision, and that a party may not appeal a finding of fact or conclusion of law unless objections are timely filed. Here, Craig filed his request for an extension of time to file objections and the objections themselves a week after the 14-day period expired and, more importantly, after the trial court had already entered its judgment adopting the magistrate's decision. The court properly declined to consider the objections.[2]

**{¶ 11}** The sixth assignment of error is overruled.

---

[2] The court did not dismiss the objections, as Craig says in his brief, but overruled them. More accurately, the objections should have been dismissed because the court did not have jurisdiction to consider them. *See Murray* at ¶ 5-6.

## B. *The magistrate's findings, conclusions, and rulings*

{¶ 12} Because Craig did not timely object to the magistrate's decision our review of the first, second, third, fourth, and fifth assignments is limited to review for plain error. Civ.R. 53 provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion." Civ.R. 53(D)(3)(b)(iv) (emphasis added). "In such situations, we review for plain error only." (Citation omitted.) *Schutz v. Schutz*, 2017-Ohio-695, ___N.E.3d___, ¶ 44 (2d Dist.).

{¶ 13} Craig has waived all but plain error regarding the magistrate's findings and conclusions and likewise he has waived all but plain error regarding the magistrate's rulings on his motions. *See Trammell v. Powell*, 2d Dist. Montgomery No. 23832, 2011-Ohio-2978, ¶ 10 (concluding that because the appellant did not file written objections he waived all but plain error regarding the magistrate's denial of his motion to be present at a CSPO hearing). "The plain error doctrine permits correction of judicial proceedings when error is clearly apparent on the face of the record and is prejudicial to the appellant." (Citation omitted.) *Reichert v. Ingersoll*, 18 Ohio St.3d 220, 223, 480 N.E.2d 802 (1985). *Accord In re C.N.*, 2d Dist. Montgomery No. 27119, 2016-Ohio-7322, ¶ 55. Plain error does not occur unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). "[U]se of this doctrine 'is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Schutz v. Schutz*, 2017-Ohio-695, ___N.E.3d___, ¶ 44 (2d Dist.), quoting *Reichert* at 223.

{¶ 14} Craig argues in the first assignment of error that the magistrate erred by

naming Thuyvi the children's residential parent and legal guardian. Custody changes are governed by R.C. 3109.04(E) and (F). A court may modify a prior custody decree if it finds that a change has occurred in the circumstances of the child's residential parent and that the modification is necessary to serve the child's best interest. R.C. 3109.04(E)(1)(a). In determining the best interest of the child, the court must consider all relevant factors, including certain statutory factors. R.C. 3109.04(F)(1). The magistrate here found that being sent to prison for six years is a clear change in Craig's circumstances. *Compare King v. King*, 4th Dist. Jackson No. 13CA8, 2014-Ohio-5837, ¶ 51 (saying that "the incarceration of a custodial parent may constitute a 'change of circumstances' "). As the magistrate pointed out, it is no longer possible for him to be the children's residential parent. The magistrate then considered the statutory factors and concluded that naming Thuyvi the residential parent and legal custodian is in the children's best interest. The magistrate found that the children have been living with her since December 2015 and are doing well in her care, doing well at school and at home. Any harm likely to be caused by the change, found the magistrate, is outweighed by the benefits of the change.

{¶ 15} Ordinarily "[a] court's custody decision is reviewed under the abuse-of-discretion standard." *Shaffer v. Wagaman*, 2d Dist. Clark No. 2012-CA-53, 2013-Ohio-509, ¶ 6, citing *Masters v. Masters,* 69 Ohio St.3d 83, 85, 630 N.E.2d 665 (1994). A court does not abuse its discretion if its decision " 'is supported by a substantial amount of credible and competent evidence.' " *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997), quoting *Bechtol v. Bechtol,* 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus. There is evidence to support the magistrate's findings and the custody decision. We see no abuse of discretion and therefore there is no plain error in this regard.

{¶ 16} Craig argues in the second assignment of error that the magistrate should have issued subpoenas on his behalf. Craig filed a motion asking the court to subpoena three witnesses to testify about what a bad mother Thuyvi was and to subpoena the prison where Craig is imprisoned for copies of emails between him and Thuyvi that show, Craig says, that Thuyvi wanted to give up all her parental rights and show that she abandoned the children for several days. The magistrate denied Craig's request that the court issue subpoenas, saying that it is "inappropriate for the court to issue subpoenas on any party's behalf." Craig presents no real argument supporting this assignment of error. More importantly, he fails to sufficiently detail what evidence these witnesses would have introduced and we are therefore unable to conclude the result would be any different even if they had testified. Again we see no plain error.

{¶ 17} Craig argues in the third assignment of error that parenting time or visitation should have been ordered. When determining whether to grant parenting time the court shall consider those factors listed in R.C. 3109.051(D), which includes "(16) Any other factor in the best interest of the child." The magistrate did not specifically order parenting time, saying that Thuyvi "shall monitor th[e] children and decide when they are ready to see Craig again." (Doc. 38 at 8.) "Visitation is a right or privilege that is normally, but not always, granted to a nonresidential parent." *Calhoun v. Calhoun*, 12th Dist. Fayette No. CA95-11-024, 1996 WL 307128, *2 (June 10, 1996), citing R.C. 3109.051(A). The right may be denied when extraordinary circumstances exist. *Id.*; *Tramontana v. Thacker*, 3d Dist. Marion No. 9-15-33, 2016-Ohio-862, ¶ 13; *In re Hall*, 65 Ohio App.3d 88, 90, 582 N.E.2d 1055 (10th Dist.1989). Being imprisoned for several years has been held to be an extraordinary circumstance. *See Tramontana* at ¶ 13 (saying that "imprisonment for a

term of years is an extraordinary circumstance supporting a trial court's denial of visitation"); *Hall* at 90 (saying that "the natural parent's being imprisoned for a term of years is an extraordinary (not an ordinary) circumstance"); *Calhoun* at *2 (holding that imprisonment for a term of three to ten years is an extraordinary circumstance permitting a trial court to deny visitation). When there is an extraordinary circumstance, "visitation between a child and an incarcerated parent should be granted only where it is demonstrated that such visitation is in the best interest of the child." *Hall* at 91; *see also Tramontana* at ¶ 13 (saying the same).

{¶ 18} We have previously held that a trial court cannot impose a blanket policy to deny visitation to an incarcerated parent. *In re C.K.*, 2d Dist. Montgomery No. 25728, 2013–Ohio–4513, ¶ 14. We recently reiterated "incarcerated parents ' "have the right to present evidence in an attempt to meet their burden of proof" ' to establish that an award of parenting time is in their child's best interest. [*C.K.*] at ¶ 15, quoting *In re Jergens*, 2d Dist. Montgomery No. 16848, 1998 WL 336702, *2 (June 26, 1998). We also recognized in *Jergens* '[i]f [a parent is] unable to attend a visitation hearing, [the parent] can always file affidavits or testify by deposition. *Id.*' " *In the Matter of A.K.C.*, 2d Dist. Champaign No. 2016 CA 16, 2017-Ohio-847, ¶ 5. Craig did not present an affidavit or deposition and failed to present evidence that it was in the best interest of the children to visit him in prison.

{¶ 19} The children in this matter are a boy born in early 2010 and a girl born in early 2011, which would have made them age 6 and 5 at the time of the hearing. In the decision of the magistrate it is reflected that originally mother took the children to prison approximately 2 times a month after father was sentenced in December 2015. "But those

visits upset the children — They were exhibiting behavioral issues and separation anxiety," so she stopped the visits. (Doc. 38 at 5) "As to parenting time, no order for parenting time will be issued herein. [Mother] shall monitor that [sic] children and decide when they are ready to see Craig again." *Id.* The conclusion of the Magistrate Decision includes "3. Parenting time shall be by agreement of the parties." *Id.* at 8. The court's Judgment Entry Adopting Magistrate Decision includes the same order (Doc. 41). On this record we are unable to conclude that the decisions of the magistrate or trial court constitute an abuse of discretion or plain error and therefore the third assignment of error is overruled.

{¶ 20} Craig argues in the fourth assignment of error that child support is too high. In determining child support, the magistrate deviated from the guidelines, finding that it is "just, reasonable, appropriate and in the children's best interest" that Craig pay nominal child support of $15 each month for each child plus a $1 administration fee, for a total of $31 per month. Said the magistrate, "This will allow Craig to contribute to his [children's] needs if he can and if Craig is unable to pay that amount during his incarceration, then the arrearage of approximately $2,160 will be owed when he is released which is a manageable amount." According to Craig, in prison he earns only $17 each month.

{¶ 21} By statute, the minimum amount of child support is $50 per month unless circumstances warrant less. *See* R.C. 3119.06. Here, Craig's imprisonment is such a circumstance, so he was ordered to pay significantly less than the minimum. We see no plain error.

{¶ 22} Craig argues in the fifth assignment of error that he should have been allowed to be physically present at the hearings before the magistrate or at least present

through alternative means. Craig filed a motion asking the court to allow Crystal Reed, his mother and attorney-in-fact, to appear at the hearing on his behalf. The title of his motion only referred to his request for his mother to appear on his behalf. In the narrative of the motion, he stated, "[i]n the alternative," he "would not object to transport to the hearing or to appearance via Skype." Craig's mother did appear at the hearing but she was advised that Craig's motion was denied because "it is inappropriate for a Power of Attorney [to] represent a party in a hearing." The magistrate did not address Craig's alternative request.

{¶ 23} "[A] Fourteenth Amendment due process right of physical access to the courts has not been extended to prisoners." *Trammell*, 2011-Ohio-2978, at ¶ 6; *see also Cincinnati Ins. Co. v. Jacob*, 2d Dist. Montgomery No. 25407, 2013-Ohio-2573, ¶ 45 (quoting the same). Indeed, it has been held that an incarcerated appellant's due process rights were not violated when the trial court denied her motion to appear at a hearing involving the termination of her parental rights. *See In re Sprague*, 113 Ohio App.3d 274, 276-277, 680 N.E.2d 1041 (12th Dist.1996). But we have said that "[w]hen prisoners are involved in civil actions in courts and the court does not find it appropriate to transport the prisoner to the courthouse, a trial court should consider innovative, alternative ways for the prisoner to participate in the action, such as telephone conference calls, rather than rendering judgment against the prisoner, especially if the prisoner suggests an alternative means for participation." *Shepard Grain Co. v. Creager*, 160 Ohio App.3d 377, 2005-Ohio-1717, 827 N.E.2d 392, ¶ 24 (2d Dist.) (holding that the trial court abused its discretion by not allowing the defendant to participate in a hearing via telephone). Here though, Craig did not ask to participate in the hearing by telephone. Moreover there is

no evidence that the courtroom or the prison facility was equipped to allow participation via Skype. Ultimately "[t]he decision whether or not to allow an incarcerated party to be present is within the sound discretion of the trial court." *Shepard Grain Co. v. Creager*, at ¶ 17. Finally, we reiterate that we are limited to plain error analysis and Craig has not demonstrated what if any evidence he could have introduced that would have made the result any different. On this record we cannot say that the denial of the motion constituted plain error.

{¶ 24} As to the first five assignments of error, we find no clear error on the face of the record and no exceptional circumstances or manifest injustice warranting the application of the plain error doctrine.

{¶ 25} Accordingly, the first, second, third, fourth, and fifth assignments of error are overruled.

### C. *Craig's "sworn statement"*

{¶ 26} Craig argues in the seventh assignment of error that the trial court should not have stricken his "sworn statement" from the record. Craig attached the statement to his untimely filed objections and asked the court to consider it as his "testimony to the court." Craig says that he submitted the statement because the magistrate did not allow him to participate in the hearing.

{¶ 27} The trial court did not err by striking the statement. "[A] party generally does not have the right to reopen his case and submit further evidence after he has rested; however, a court can, within its discretion, allow a party to do so when the circumstances warrant such relief." (Citations omitted.) *Pisanick-Miller v. Roulette Pontiac-Cadillac GMC, Inc.*, 62 Ohio App.3d 757, 761, 577 N.E.2d 446 (11th Dist.1991). Assuming that Craig's

"sworn statement" is even admissible, we see no circumstances here that required the trial court to admit it—particularly since the hearing had concluded, the magistrate had issued a decision and the trial court had already entered judgment.

{¶ 28} The seventh assignment of error is overruled.

### III. Conclusion

{¶ 29} We have overruled all seven of the assignments of error presented. The trial court's judgment is affirmed.

. . . . . . . . . . . .

TUCKER, J., concurs.

DONOVAN, J., concurring:

{¶ 30} Although I agree with the judgment on this record, it is important to recognize the compelling need for a father/child relationship even though the circumstances are less than ideal. Courts must be cautious to recognize the natural rights of an incarcerated parent.

{¶ 31} The Ohio Supreme Court has not weighed in on the issue of whether the party opposing visitation should bear the burden of proof by adducing evidence (expert or otherwise) of physical or psychological harm to the child if visitation occurs. *See generally* Sims, *Can My Daddy Hug Me?: Deciding Whether Visiting Dad in a Prison Facility is in the Best Interest of the Child*, 66 Brook. L. Rev. 933 (2001). This is an important issue which the Ohio Supreme Court should address as modern prisons encourage visitation which may not only benefit the child but the offender as well in the rehabilitative process.

. . . . . . . . . .

Copies mailed to:

Craig Thompson
Thomas Schiff
Hon. Timothy D. Wood