[Cite as *Hartley v. Hartley*, 2017-Ohio-8494.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JENNIFER LYNNE HARTLEY | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27646 |
| | : | |
| v. | : | Trial Court Case No. 02-DR-1816 |
| | : | |
| SHAWN HARTLEY | : | (Domestic Relations Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of November, 2017.

. . . . . . . . . . .

BRIAN A. KRUSE, Atty. Reg. No. 0087411, 10532 Success Lane, Dayton, Ohio 45458
    Attorney for Plaintiff-Appellee

JEREMY M. TOMB, Atty. Reg. No. 0079664, 124 West Main Street, Troy, Ohio 45373
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, P.J.

{¶ 1} Shawn Hartley appeals from the trial court's decision and judgment entry overruling his objections to a magistrate's decision and sustaining plaintiff-appellee Jennifer Hartley's motion for a change of custody regarding their minor child.

{¶ 2} Shawn advances six assignments of error. In his first and second assignments of error, Shawn challenges the trial court's finding of a "change in circumstances" sufficient to justify reallocating custody to Jennifer as being against the weight of the evidence and an abuse of discretion. In his third and fourth assignments of error, Shawn claims the trial court's finding that reallocating custody to Jennifer was in the child's best interest is against the weight of the evidence and is an abuse of discretion. In his fifth and sixth assignments of error, Shawn contends the trial court's dismissal of his motion to modify child support, as moot, is against the weight of the evidence and is an abuse of discretion.

{¶ 3} The record reflects that Shawn and Jennifer divorced in 2003 after having two children together—S.H., who was born in 1998, and M.H., who was born in 2000. Jennifer originally was designated the residential parent of both children. In February 2014, Jennifer was designated the residential parent and legal custodian of S.H, and Shawn was designated the residential parent and legal custodian of M.H. In May 2016, eighteen-year-old S.H. was emancipated. In August 2016, Jennifer moved for legal custody of M.H. The matter proceeded to a hearing before a magistrate in December 2016. Shawn and Jennifer both testified at the hearing and presented exhibits. In connection with Jennifer's custody motion, the magistrate also interviewed sixteen-year-old M.H. in camera.

{¶ 4} On March 10, 2017, the magistrate filed a decision sustaining Jennifer's motion for legal custody of M.H. In support, the magistrate found that Shawn repeatedly, and over an extended period of time, had failed to facilitate court-ordered parenting time between M.H. and Jennifer. The magistrate concluded that Shawn had "done nothing" to ensure M.H.'s compliance with parenting-time orders. It also concluded that Jennifer would "not have access to [M.H.] so long as defendant has custody." The magistrate additionally found that Shawn had refused to comply with a counseling order for the child. The magistrate held that Shawn's failure to facilitate court-ordered parenting time between M.H. and Jennifer constituted a substantial change in circumstances justifying an award of custody to Jennifer. The magistrate also held that the benefit from a change of custody, namely "continuation of the parental relationship between mother and child," outweighed any detriment caused by the change. On this issue, the magistrate noted: "The child will not have to change schools and her employment schedule * * * may be impacted slightly. There was no evidence that plaintiff having custody would harm the child—the child may be slightly inconvenienced by having to live under her mother's set of rules." Finally, the magistrate stated: "After considering the R.C. 3109.04(F) factors and all other relevant factors, it is found to be in the child's best interests that plaintiff be designated the child's residential parent and legal custodian." In support of this finding, the magistrate reasoned:

As noted before, the change of custody is the only option to effectuate plaintiff's continued and consistent contact and companionship with [M.H.]. All other attempts have failed. Defendant has evidenced a refusal to encourage or facilitate parenting time. The child will be residing

with her mother and emancipated sister. The child will continue in the same school.

(Doc. #408 at 5).

{¶ 5} Shawn filed objections and supplemental objections to the magistrate's decision. The trial court overruled the objections in a June 13, 2017 decision and judgment entry. Among other things, Shawn objected to the magistrate's finding that he had failed to comply with a counseling order for M.H., that he had not encouraged or facilitated parenting time between M.H. and Jennifer, and that a change of custody was the only way Jennifer would be able to exercise parenting time with M.H.

{¶ 6} The trial court addressed and rejected each of Shawn's arguments. It also independently reviewed the record and found that Shawn's repeated failure to facilitate and honor court-ordered parenting time between Jennifer and M.H. constituted a substantial change in circumstances, that awarding Jennifer legal custody of M.H. was in the child's best interest because it would "provide the opportunity for a mother-daughter relationship," and that "[t]he benefit of this change outweighs any negligible risk of harm to the child, as her school, work, and extracurricular activity will remain unchanged, and she will be able to maintain a relationship with her father pursuant to a modified Standard Order of Parenting Time." (Doc. #439 at 9). Finally, the trial court overruled an objection concerning child support, finding a prior motion by Shawn to establish child support moot because Jennifer now would have custody of M.H. (*Id.* at 11). This appeal followed.

{¶ 7} In his first two assignments of error, which he briefs and argues together, Shawn challenges the trial court's finding of a change in circumstances sufficient to warrant a change of custody. We begin our analysis with the applicable statute, R.C.

3109.04(E)(1)(a), which prohibits a court from modifying custody "unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child [or] the child's residential parent." On appeal, Shawn contends the applicable "prior decree" was an August 8, 2016 decision and judgment (Doc. # 390) or a March 15, 2016 agreed order (Doc. #372). He argues that any issues involving him not cooperating with counseling for M.H. or not facilitating Jennifer's visitation with M.H. predated both of these dates. Therefore, he contends no change in circumstances has occurred since the "prior decree."

{¶ 8} We find Shawn's argument to be unpersuasive. The August 8, 2016 decision and judgment he cites disposed of contempt, parenting-time, and child-support issues. It also set a hearing on a motion for modification of custody. Significantly, however, the August 8, 2016 decision and judgment did not reallocate parental rights. Similarly, the March 15, 2016 agreed order he cites also addressed contempt, parenting-time, and child support issues. Although it referenced a motion by Jennifer to reallocate parental rights, that motion was dismissed. (Doc. #372 at 2).

{¶ 9} For purposes of R.C. 3109.04(E)(1)(a), the reference to the "prior decree" means the last decree that actually allocated parental rights. *In re M.B.*, 2d Dist. Champaign No. 2006-CA-6, 2006-Ohio-3756, ¶ 10. "[T]he relevant time frame for determining whether a change in circumstances exists is not the period between a non-custodial parent's prior unsuccessful motion for a change of custody and the filing of a new motion. This is so because an unsuccessful motion for a change of custody does not result in a decree that allocates parental rights." *Id.* "As a result, when a non-custodial

parent files a second or successive motion for a change of custody after previously having failed on a similar motion, the starting point for determining whether a change in circumstances exists remains the date of the decree that actually allocated parental rights." *Id.*, citing *Gaines v. Pelzl*, 2d Dist. Greene No. 2003-CA-60, 2004-Ohio-2043, ¶ 6; *see also Pathan v. Pathan*, 2d Dist. Montgomery No. 18254, 2000 WL 1299529, *3 (Sept. 15, 2000) (recognizing that continued interference with a non-custodial parent's visitation can constitute a change in circumstances even if the interference was raised in connection with a prior unsuccessful custody motion).

{¶ 10} Here the last decree that actually allocated parental rights with regard to M.H. was a February 13, 2014 agreed order that designated Shawn the child's residential parent and legal custodian. (Doc. #239). Therefore, any change in circumstances occurring after that date constituted potential grounds for a change in custody. Shawn's alleged failure to cooperate with counseling and failure to facilitate visitation between Jennifer and M.H occurred after he obtained legal custody of the child. Consequently, the trial court did not err in considering those issues when determining whether a change in circumstances had occurred. We note too that "[f]rustration of and interference with visitation are factors which support a finding of a change of circumstances." *Pellettiere v. Pellettiere*, 2d Dist. Montgomery No. 23141, 2009-Ohio-5407, ¶ 16. This is so because " '[w]hen a court makes a custodial decision, it makes a presumption that the circumstances are such that the residential parent will promote both maternal and paternal affection.' " *Id.*, quoting *Beekman v. Beekman*, 96 Ohio App.3d 783, 789, 645 N.E.2d 1332 (4th Dist.1994).

{¶ 11} Shawn contends he did not interfere with or fail to facilitate Jennifer's court-

ordered visitation. He argues that M.H. simply did not want to visit her mother and that he did not, and realistically could not, force the child to do so. Shawn cites his testimony that M.H. felt "mistreated" over an incident that involved Jennifer grabbing a cell phone, that M.H. wanted an apology for the incident, and that Jennifer had refused to comply. The trial court's decision demonstrates, however, that it perceived the visitation problem more broadly, and that it believed Shawn had failed to comply, over an extended period of time, with his obligation to promote visitation between Jennifer and M.H. Citing hearing testimony, the trial court explained:

> Jennifer testified that since February 2014, she has seen [M.H.] for approximately 35 days of her scheduled visitation. Transcript, at 6. Pursuant to a November 19, 2014 Magistrate Decision and Permanent Order, Jennifer was to have mid-week parenting time with [M.H.] on Wednesdays from after school until 8:00 p.m. [M.H.] was to take the bus to Jennifer's home, and then Jennifer was to return [M.H.] to Shawn at the Friendly's parking lot. This parenting time never occurred. Transcript at 15-16. Instead of riding the bus, Shawn drove [M.H.] to Jennifer's house, but [M.H.] did not get out of the car. Id. at 16. Jennifer testified that there were instances where Shawn came to her house, without her permission, and removed [M.H.] from the home, during Jennifer's parenting time. Id. at 17-18. On President's Day, 2015, Jennifer was supposed to have parenting time with the minor children beginning at 9:00 a.m. pursuant to the order in place at that time. Because the holiday fell at the end of Shawn's weekend of parenting time, he refused Jennifer's parenting time, instead returning [M.H.] at 9:00 p.m.

on Monday. Id. at 19. After June of 2015, Jennifer had no parenting time with [M.H.], until the four scheduled days provided pursuant to the March 15, 2016 Agreed Order. Id. at 20.

Jennifer testified that the Agreed Order filed March 15, 2016, which was subsequent to an in camera interview of [M.H.] by the magistrate, provided for parenting time between Jennifer and [M.H.], which she exercised. Transcript at 8-10. Jennifer testified that, although the Magistrate Order filed May 3, 2016, subsequent to another in camera interview with [M.H.], provided that Jennifer was to have additional parenting time with [M.H.], that she did not have any parenting time after that order. Transcript at 8.

Shawn testified that he has made "multiple attempts" to facilitate parenting time with Jennifer and [M.H.], but could provide no specific instances or dates related thereto. Transcript at 69-70, 97. Shawn acknowledged that he would not make [M.H.] go to parenting time with her mother. Transcript at 71-72. Shawn has taken away [M.H.'s] phone for refusing to visit with her mother. Transcript at 72. Shawn has not taken away [M.H.'s] car or grounded her, nor has he provided any incentives, to encourage [M.H.] to participate in parenting time with her mother. Transcript, at 74-76.

Shawn contends that [M.H.] wants an apology from her mother, and that he will not force her to spend time with her mother because [M.H.] would run away. It appears to the Court that Shawn should understand that [M.H.]

could benefit from some counseling to work through these issues. Nonetheless, Shawn refused to cooperate in the counseling order.

The Court finds that Jennifer was denied parenting time by Shawn, and there has been an absence of parenting time with [M.H.] for a significant period of time. This constitutes a change in circumstances warranting a change in custody within the meaning of R.C. 3109.04.

(Doc. #439 at 7-9).

{¶ 12} Although Shawn denies failing to facilitate Jennifer's parenting time, the trial court was best positioned to determine whether he tried hard enough to get M.H. to visit with Jennifer, whether he reasonably should have done more, and whether he impeded visitation. Resolution of these issues was within the province of the trial court as the trier of fact. We cannot say the trial court abused its discretion in reaching the conclusion that it did. Nor is the trial court's finding of a change in circumstances against the manifest weight of the evidence. Accordingly, the first two assignments of error are overruled.

{¶ 13} In his third and fourth assignments of error, which he briefs and argues together, Shawn contends the trial court erred in finding that reallocating custody to Jennifer was in M.H.'s best interest. He claims this finding is an abuse of discretion and is against the weight of the evidence. In support, Shawn cites his own testimony about M.H. not wanting to reside with Jennifer and about M.H. purportedly threatening to run away if forced to do so. Shawn also cites his testimony that M.H. had threatened to graduate from high school early if compelled to live with Jennifer. Shawn additionally suggests that changing custody to Jennifer might interfere with M.H.'s attendance at a community college, where she is taking classes early, or her part-time work schedule at

a fast-food restaurant. Finally, Shawn contends the statutory best-interest factors do not favor awarding Jennifer custody and that the benefits from a change of custody do not outweigh the harm.

{¶ 14} We review the trial court's best-interest determination for an abuse of discretion. *Thompson v. Thompson*, 2d Dist. Montgomery No. 27394, 2017-Ohio-8192, ¶ 14-15. We see no abuse of discretion here. The hearing transcript reflects that M.H. (who is now seventeen years old) is an excellent student who maintains a busy schedule with work, school, and extracurricular activities. While several of the statutory best-interest factors appear to be neutral in this case, the trial court appears to have been motivated primarily by findings that Shawn had impeded Jennifer's parenting time, that "provid[ing] the opportunity for a mother-daughter relationship" was in M.H.'s best interest, and that changing custody was "the only way to ensure parenting time for Jennifer with [M.H.]". (Doc. # 439 at 9). Upon review of the entire record, including a sealed transcript of the magistrate's in camera interview with M.H., we conclude that the record contains evidence to support the foregoing findings, which are not an abuse of discretion.

{¶ 15} We also see no evidence in the record establishing that awarding Jennifer custody of M.H. will interfere with the child's school attendance, her ability to work part time, or her extracurricular activities. Although Shawn speculates that M.H. may have transportation problems if she resides with Jennifer, the evidence does not support his claim. Finally, we see no abuse of discretion in the trial court's finding that the benefits of the change of custody outweigh any harm likely to be caused by the change. We note that both parents reside locally and that the trial court awarded Shawn parenting time in excess of the standard order. Shawn's third and fourth assignments of error are overruled.

{¶ 16} In his fifth and sixth assignments of error, which he briefs and argues together, Shawn challenges the trial court's dismissal of his motion to modify child support, as moot. These assignments of error concern a February 17, 2016 motion Shawn filed addressing child support. The parties' above-referenced March 2016 agreed entry stated that the motion would be "reset" following the emancipation of S.H., the parties' other child. S.H. subsequently was emancipated in May 2016. Thereafter, the trial court filed its June 13, 2017 decision and judgment entry awarding Jennifer legal custody of M.H. The trial court made the custody change effective March 31, 2017, the date chosen by the magistrate. In the course of its ruling, the trial court found Shawn's child-support motion moot.

{¶ 17} On appeal, Shawn contends the motion was not moot despite the change in custody. He asserts that his motion sought child support from Jennifer for his support of M.H. Although he plainly would not be entitled to child support for M.H. after the March 31, 2017 effective date of the change in custody to Jennifer, Shawn claims an issue remains as to his entitlement to child support from the date of his motion until the change in custody.

{¶ 18} Upon review, we find Shawn's argument to be unpersuasive. In February 2014, Jennifer was designated the residential parent and legal custodian of S.H, and Shawn was designated the residential parent and legal custodian of M.H. At that time, neither party paid child support. Thereafter, Shawn moved for child support for M.H. In May 2015, the magistrate awarded him child support of $281 per month based on a split-custody worksheet. (Doc. #336 at 4-6). On February 17, 2016, Shawn filed his motion to modify child support. (Doc. #368). In its entirety, the motion states:

Now comes Defendant, Shawn Hartley, by and through counsel, and hereby moves this Court for an Order modifying the child support obligation for the minor child, [S.H.], dob: * * *. Said request is based upon emancipation of the minor child.

**WHEREFORE**, Defendant, Shawn Hartley, respectfully requests that this Court issue an Order modifying the child support obligation paid by Defendant.

{¶ 19} On its face, this motion addressed a non-existent child support obligation for S.H. based on the child's upcoming emancipation. It also requested an order modifying a child support obligation "paid by" Shawn, the defendant, despite the fact that he paid no child support. Inferentially, the motion conceivably also could be construed to mean what Shawn now suggests—that Jennifer's $281 child-support obligation for M.H. should increase following S.H.'s emancipation. But the motion does not actually say that. In its June 13, 2017 judgment addressing the issue, the trial court reasoned:

The parties had split custody of the minor children since 2014. A Magistrate Decision filed May 15, 2015, pursuant to Shawn's motion to establish child support, determined that Jennifer shall pay child support, for the support of [M.H.], who was in Shawn's custody, in the amount of $281.00 per month per child, for one child. No order of child support was made with regard to [S.H.], whose custodial parent was Jennifer. Shawn filed a Motion to Modify Child Support Obligation on February 17, 2016, based upon emancipation of the elder child, [S.H.]. That matter was set for hearing on March 15, 2016. The Agreed Order filed Mar[ch] 15, 2016

indicates that the parties agreed that this matter would be reset until after [S.H.] was emancipated. [S.H.] was emancipated on May 2, 2016. That emancipation order indicates that no child support was being paid by Shawn for the support of [S.H.] (whose custodial parent was Jennifer). Child support, as it relates to [M.H.], was reevaluated at the current hearing. Because custody is awarded to Jennifer, Shawn has a child support obligation for the support of [M.H.]. Accordingly, this issue is moot.

(Doc. # 439 at 11).

**{¶ 20}** Based on the nature of Shawn's child-support motion and the custodial history set forth by the trial court, we cannot say it abused its discretion in finding his motion moot. As noted, his motion expressly requested modification of his non-existent obligation to pay Jennifer child support for S.H., who recently had been emancipated. Even if we construe his motion as containing an implicit request for an increase of Jennifer's then-existing $281 monthly support obligation for M.H., the trial court, in the exercise of its discretion, reasonably could have declined to award Shawn increased support during the pendency of his motion prior to legal custody of M.H. switching to Jennifer, an event that did make his support request moot prospectively. Accordingly, the fifth and sixth assignments of error are overruled.

**{¶ 21}** The judgment of the Montgomery County Common Pleas Court, Domestic Relations Division, is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.

Copies mailed to:

Brian A. Kruse
Jeremy M. Tomb
Hon. Denise L. Cross