[Cite as *State v. Nettles*, 2018-Ohio-4908.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                           Court of Appeals No.  S-17-053

      Appellee                                  Trial Court No.  15CR935

v.

Keith Nettles                                          **DECISION AND JUDGMENT**

      Appellant                                 Decided:  December 7, 2018

* * * * *

Michael DeWine, Ohio Attorney General, and Christopher L.
Kinsler, Assistant Attorney General, for appellee.

Patrick J. Milligan and James E. Kocka, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Defendant-appellant, Keith Nettles, appeals the November 7, 2017 judgment

of the Sandusky County Court of Common Pleas which, following a jury trial convicting

him of multiple counts of trafficking in cocaine, trafficking in heroin, and aggravated drug trafficking, sentenced appellant to a total of 34 years of imprisonment. For the reasons that follow, we affirm.

{¶ 2} Appellant was indicted on September 23, 2015, on 37 felony counts including multiple counts of trafficking in cocaine, trafficking in heroin, conspiracy, one count of money laundering, one count of aggravated funding of drug trafficking, and one count of engaging in a pattern of corrupt activity. Several of the counts contained major drug offender ("MDO") specifications. Sixteen of the counts were dismissed by the state prior to trial. At trial, following defense counsel's hearsay arguments relating to telephone conversations of individuals not testifying at trial, the state dismissed an additional six counts. Appellant was ultimately tried on 15 counts including 11 counts of trafficking in cocaine, six counts with MDO specifications, one count of trafficking in heroin, one count of engaging in a pattern of corrupt activity, one count of money laundering, and one count of aggravated funding of drug trafficking. The count of money laundering was dismissed prior to jury deliberations.

{¶ 3} Prior to trial, appellant filed a motion to suppress all evidence derived from the interception warrant issued on June 19, 2014, in Fremont, Sandusky County, Ohio. The warrant authorized the interception of all communications to and from the target phone of "Keith Last Name Unknown ("LNU") a/k/a/ Keith" for the purpose of uncovering the full nature and extent of the narcotics trafficking involving appellant, of

2.

individuals named in the warrant, and of unamend individuals and to prosecute those identified. The warrant authorized Drug Enforcement Administration (DEA) Special Agent Michael Noel, Jr., to intercept the communications at a listening post in Toledo, Lucas County, Ohio, for a period of one month commencing no later than ten days after the issuance of the warrant.

{¶ 4} Appellant's motion disputed the Sandusky County court's jurisdiction to issue the warrant, that the affidavit in support of the warrant complied with the mandatory statutory provisions, and that sufficient probable cause supported the warrant. On September 27, 2017, the court held a final pretrial/suppression hearing. While not a full evidentiary hearing, the parties clarified their arguments for the court. Following the hearing, the parties submitted additional written arguments and the state provided the affidavit of DEA Special Agent Michael Noel, Jr., which stated that the application for a search warrant included a letter from the Ohio Attorney General's office; the attached letter, dated June 17, 2014, indicated that the Ohio Attorney General agreed with the submission of the application as required by statute.

{¶ 5} On October 16, 2017, the trial court denied the motion to suppress. The court, relying on federal cases interpreting near-identical federal wiretapping laws, concluded that a search warrant could have been properly sought in Sandusky or Lucas counties: either where the phone was located or the equipment used to intercept the calls. The court next determined that the state complied with R.C. 2933.53(B)(9), by providing

3.

the affidavit which indicated that the necessary attorney general authorization was submitted at the time of the application for the warrant.  Finally, the court concluded that sufficient probable cause supported the issuance of the warrant.

{¶ 6} The matter then proceeded to a jury trial on October 23, 2017.  The state presented the testimony of investigating officers from federal and local agencies and four witnesses, who were the identified in the application for the interception warrant and/or warrant, regarding their dealings with appellant and their roles in the drug trafficking operation.  The co-conspirators/witnesses, in particular Joe Brown Moore, Jr., who acted as a courier from Detroit to Fremont, testified regarding the contents of several of the intercepted telephone conversations.  The defense did not present any testimony or evidence.

{¶ 7} Following deliberations, the jury found appellant guilty of 11 counts and not guilty of three counts.  On November 7, 2017, appellant was sentenced to 11-year prison terms for seven counts of trafficking in cocaine, 12 month and 18-month sentences for two counts of trafficking in cocaine, eight years of imprisonment for trafficking in heroin, and four years of imprisonment for engaging in a pattern of corrupt activity.  The 11-year counts were grouped in two bundles with each bundle being ordered to be served concurrently but consecutively to the other.  The four-year term was ordered to be served consecutive to the eight-year terms and consecutive to the other terms for a total mandatory sentence of 34 years (11+11+4+8). This appeal followed.

4.

**{¶ 8}** Appellant raises the following assignments of error for our consideration:

Assignment of Error No. 1: The trial court committed reversible error in denying appellant's motion to suppress any evidence derived from the facially defective interception warrant issued on June 19, 2014, thereby depriving appellant of his right of due process and right to be free from unreasonable searches and seizures as protected by the 4th and 14th Amendments to the United States Constitution and Article 1 §§ 10 and 14 of the Ohio Constitution.

Assignment of Error No. 2: The trial court committed reversible error and denied appellant due process of law by failing to hold an evidentiary hearing relative to appellant's motion to suppress evidence derived from the interception warrant issued on June 19, 2014.

Assignment of Error No. 3: The trial court erred by imposing consecutive sentences when its findings made pursuant to R.C. 2929.14(C)(4) are not clearly and convincingly supported by the record.

Assignment of Error No. 4: The trial court erred by engaging in judicial fact finding when imposing the maximum sentence of 8 years for Count 4, trafficking in heroin.

{¶ 9} Appellant's first assignment of error challenges the trial court's denial of his motion to suppress the evidence obtained through the execution of an interception warrant. R.C. 2933.63 provides:

(A) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of this state or of a political subdivision of this state, other than a grand jury, may request the involved court, department, officer, agency, body, or authority, by motion, to suppress the contents, or evidence derived from the contents, of a wire, oral, or electronic communication intercepted pursuant to sections 2933.51 to 2933.66 of the Revised Code for any of the following reasons:

(1) The communication was unlawfully intercepted.

(2) The interception warrant under which the communication was intercepted is insufficient on its face.

(3) The interception was not made in conformity with the interception warrant or an oral order for an interception granted under section 2933.57 of the Revised Code.

(4) The communications are of a privileged character and a special need for their interception is not shown or is inadequate as shown.

{¶ 10} Appellate review of a trial court's ruling on a motion to suppress evidence presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The Ohio Supreme Court has identified our standard of review:

[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539. *Id.*

{¶ 11} Appellant makes three arguments in support of his contention that the evidence seized pursuant to the interception warrant should have been suppressed. First, appellant argues that the Sandusky County judge who issued the warrant did not have jurisdiction. Next, appellant asserts that the application for the warrant failed to contain the necessary authorization by the Ohio Attorney General pursuant to R.C. 2933.53(B)(9). And third, appellant contends that there was insufficient probable cause to support the issuance of the warrant. We will address each argument as it was presented.

7.

**Jurisdiction to Issue the Warrant**

{¶ 12} Appellant argues that the logical interpretation of the language in R.C. 2933.53(A), provides that Lucas County rather than Sandusky County had jurisdiction to issue the warrant as it was the location of the interception. The state counters that jurisdiction to issue an interception warrant is proper in either the location of the intercepted communication or the location of the listening device.

R.C. 2933.53 provides, in part:

> (A) The prosecuting attorney of the county in which an interception is to take place or in which an interception device is to be installed, or an assistant to the prosecuting attorney of that county who is specifically designated by the prosecuting attorney to exercise authority under this section, may authorize an application for an interception warrant to a judge of the court of common pleas of the county in which the interception is to take place or in which the interception device is to be installed. * * *;

> (B) Each application for an interception warrant shall be made in writing upon oath or affirmation to a judge of the court of common pleas of the county in which the interception is to take place or in which the interception device is to be installed, by a person who has received training that satisfies the minimum standards established by the attorney general and

the Ohio peace officer training commission under section 2933.64 of the Revised Code

* * *;

(3) A full and complete statement of the objective in seeking the warrant, and a full and complete statement of the facts and circumstances relied on by the applicant to justify the belief that the warrant should be issued, including, but not limited to the following:

(a) The details regarding the designated offense that has been, is being, or is about to be committed;

(b) The identity of the person, if known, who has committed, is committing, or is about to commit the designated offense and whose communications are to be intercepted and the location at which the communications are sought to be intercepted;

(c) Except as provided in division (G)(1) of this section, a particular description of the nature and location of the facilities from which, or the place at which, the communication is to be intercepted;

{¶ 13} R.C. 2933.51(C) defines "intercept" as "the aural or other acquisition of the contents of any wire, oral, or electronic communication through the use of an interception device." "'Aural transfer'" means a transfer containing the human voice at a point between and including the point of origin and the point of reception." R.C. 2933.51(T).

{¶ 14} Appellant asserts that the "clear and unambiguous" statutory language required that the application be made to a judge in the county where the interception, i.e. the listening device, was to be located. Thus, because the interception occurred in Lucas County, the warrant must have been obtained there.

{¶ 15} We first note that where the language used in statute is clear and unambiguous, the statute must be applied as written, and no further interpretation is necessary. *Szuch v. FirstEnergy Nuclear Operating Co.*, 2016-Ohio-620, 60 N.E.3d 494, ¶ 19 (6th Dist.), citing *Vaughn Indus. v. Dimech Servs.*, 167 Ohio App.3d 634, 2006-Ohio-3381, 856 N.E.2d 312, ¶ 23 (6th Dist.). If, however, the statute is subject to various interpretations, "a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at legislative intent." *Cline v. Ohio Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 96, 573 N.E.2d 77 (1991).

{¶ 16} As quoted above, an interception warrant may be obtained in the county where the "interception is to take place **or** in which an interception device is to be installed." Had the legislature intended that the warrant could only be obtained in the county where the interception device was located, it could have omitted the word "or" and the preceding language. Further, in cases where the warrant is issued in the county where the device is initially installed, it is still valid if the device is later moved- this

10.

distinction would be superfluous if the warrant could **only** issue where the listening device was located.[1]

{¶ 17} Appellant urges that if this court does review case law, it should rely on *Huff v. Spaw*, 794 F.3d 543 (6th Cir.2015). *Huff*, a Title III expectation of privacy case, involved an international interception of conversations which took place following a "pocket-dial" of a cell phone. The pocket-dial took place in Italy and the conversation was overheard and recorded in Kentucky. The court initially considered whether the alleged interception was beyond the court's jurisdiction. It noted:

> When determining whether an alleged interception is extraterritorial and therefore beyond the jurisdiction of federal courts as a question arising under Title III, we do not consider whether the plaintiffs are citizens of the United States * * * [i]nstead, we look to "where the interception took place." (Citations omitted.) *Id.* at 547.

---

[1] R.C. 2933.58(C) provides:

An interception warrant issued pursuant to sections 2933.53 to 2933.55 of the Revised Code or an oral order for an interception granted under section 2933.57 of the Revised Code authorizes the interception of wire, oral, or electronic communications or the installation of an interception device within the jurisdiction of the court of common pleas served by the judge who issued the warrant or granted the oral order. The warrant or oral order is valid at any place **if** the interception device is installed within the jurisdiction of the judge who issued the warrant or granted the oral order and is then moved to another place by persons other than the investigative officers. (Emphasis added.)

{¶ 18} The court then determined that jurisdiction was proper because "[t]he relevant inquiry [wa]s not where the Huffs' conversations took place, but where Shaw used a device to acquire the contents of those conversations." *Id.*

{¶ 19} Reviewing *Huff*, we find that it is not persuasive authority. *Huff* addressed the jurisdictional issue regarding an international phone call, not the question of the jurisdiction of a court to issue an interception warrant.

{¶ 20} In addition to the clear language of the statute, we find that the majority of and more persuasive line of cases provide that an interception warrant may be obtained in either the county where the tapped phone is located or where law enforcement hears and records the calls. Interpreting the federal wiretapping statute's definition of intercept,[2] the Eighth Circuit Court agreed with the Second and Fifth Circuits that "a communication is intercepted not only where the tapped telephone is located, but also where the contents of the redirected communication are first to be heard." *U.S. v. Henley*, 766 F.3d 893, 911 (8th Cir.2014), citing *U.S. v. Rodriguez*, 968 F.2d 130, 136 (2d Cir.1992), *U.S. v. Denman*, 100 F.3d 399, 403 (5th Cir.1996). *See also State v. Ates*, 86 A.3d. 710 (N.J.2014), *State v. McCormick*, 719 So.2d 1220 (Fla.App.1998).

---

[2] 18 U.S.C. 2510(4) defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.[;]"

12.

**{¶ 21}** Based on the foregoing, we find that the Sandusky County judge had jurisdiction to issue the interception warrant.

## R.C. 2933.53 Compliance

**{¶ 22}** Appellant next argues that the application for the interception warrant was invalid due to its failure to include a written statement from the Ohio Attorney General's office as required under R.C. 2933.53(B)(9), which provides:

(B) Each application for an interception warrant shall be made in writing upon oath or affirmation to a judge of the court of common pleas of the county in which the interception is to take place or in which the interception device is to be installed, by a person who has received training that satisfies the minimum standards established by the attorney general and the Ohio peace officer training commission under section 2933.64 of the Revised Code. Each application shall contain all of the following:

* * *;

(9) Unless the attorney general is a subject of the investigation, a written statement, signed by the attorney general or an assistant attorney general designated by the attorney general, that the attorney general or assistant attorney general has reviewed the application and either agrees or disagrees with the submission of the application to a judge of the court of

common pleas of the county in which the interception is to take place or in which the interception device is to be installed. * * *."

{¶ 23} The state asserts that the letter, though not physically attached to the application was filed contemporaneously with and considered by the trial court prior to issuing the warrant and, thus, complied with R.C. 2933.53(B)(9). In response, appellant further argues that review of the warrant is limited to its four corners and because the warrant did not mention the letter, we must presume that it was not considered.

{¶ 24} As set forth above, following the September 27, 2017 suppression hearing, the state supported its compliance argument with the affidavit of Special Agent Noel which provided that contemporaneous with the application for a search warrant, Agent Noel submitted to the judge a letter from the Ohio Attorney General's office in conformity with R.C. 2933.53(B)(9). Agent Noel stated that after the warrant was signed, the application, warrant, and letter were filed with the Sandusky County Clerk of Courts. The letter, signed by the Ohio Attorney General's general counsel for law enforcement, was attached to Noel's affidavit, was file-stamped June 19, 2014, and provided that the attorney general's office reviewed the affidavit and application in support of the interception warrant. Finally, in issuing the warrant the court stated that the application complied with R.C. 2933.53.

14.

{¶ 25} Upon review, we conclude that the Ohio Attorney General's statement was properly submitted under R.C. 2933.53(B)(9). The safeguards in place to protect against unauthorized wiretapping were not circumvented.

**Substantial Basis for Finding Probable Cause to Issue the Warrant**

{¶ 26} Appellant's final argument regarding the validity of the warrant is that the affidavit did not provide a substantial basis for a determination of probable cause. The Supreme Court of Ohio has set forth the following standard of review in reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant: "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus. Further, "a reviewing court should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.*

{¶ 27} Appellant contends that the confidential source referenced in the application lacked the necessary indicia of reliability, that the alleged surveillance failed to yield any evidence of a crime, and that the reproduced, captured telephone conversations from an investigation in Detroit, Michigan, were too speculative to provide evidence of drug trafficking.

{¶ 28} At the September 27, 2017 suppression hearing the state explained that the confidential informant, who was only mentioned in one paragraph in the 35-page application, was the "kick-off" to the investigation. The recorded conversations, involving "Keith" and Ronald Miller, who was the subject of an intercept warrant out of Detroit were explained in the application by Agent Noel who had specialized knowledge of the drug trafficking nomenclature and prior dealings between the parties. The transcribed calls were dated June 5 and June 29, 2014, within two weeks of the application.

{¶ 29} Reviewing the application as a whole, we conclude that that the Sandusky County judge has jurisdiction to issue the warrant, the application for the warrant complied with the relevant statutory provisions, and there was probable cause to support the issuance of the warrant. Thus, the trial court did not err when it denied the motion to suppress and determined that the affidavit established a probability of criminal activity involving appellant. Appellant's first assignment of error is not well-taken.

{¶ 30} Appellant, in his second assignment or error argues that the court erred when it failed to conduct a full evidentiary hearing where the claims in his motion to suppress were supported by factual allegations. Specifically, appellant argues that at the September 27, 2017 hearing, the court acknowledged that testimony was needed to determine the motion. The exchange at issue provided:

16.

MR. KINSLER: [B]ut our position is that was a part of what was presented to the – the Judge – the issuing Judge and issuing Judge was aware of that information when they signed it.

THE COURT: Can I – can I stop there and just ask both coun—is that something we need to take testimony to determine?

MR. KINSLER: I think – I don't know, we could maybe ask the agent that was there to present if that was included in the – I wasn't actually physically –

THE COURT: Okay.

MR. KINSLER: -- present for that one, so –

THE COURT: I mean, do we – do we need to find out what the facts were in order to make a proper decision?

MR. KLUCAS: It's possible. I mean, that's really sort of something that the Court has to make a decision on because you're the one making the decision, but –

* * *

THE COURT: What – what – if if Attorney Kinsler, if you could acquire an Affidavit –

MR. KINSLER: Yes, I can do that, Your Honor.

MR. KLUCAS: We'll take a look at that.

THE COURT: That – you don't have the right – you can't cross-examine an Affidavit.

MR. KLUCAS: I know that.

{¶ 31} The hearing then continued with the state addressing the merits of appellant's probable cause argument. Defense counsel responded regarding the good faith exception argument:

MR. KLUCAS: I think when there's statutory guidance here as to what the content of that warrant and that application should be, and you don't comply with the statutory guidance, I don't think good faith exception would apply to that. That's all I'm really saying.

{¶ 32} The court and parties then discussed the time-line for the submission of additional materials, including the filing of the above-referenced affidavit, the court then stated:

THE COURT: Did you want to raise any further issues regarding that –

MR. KLUCAS: Uh, huh.

THE COURT: --'cause that's the only fact-finding thing I've got here.

MR. KLUCAS: Correct.

THE COURT: And the rest of it is all application of law.

18.

MR. KLUCAS: Uh, huh.

{¶ 33} The affidavit of Agent Noel was filed on September 29, 2017; appellant, in a supplemental memorandum, asserted that the affidavit did not cure the deficiency because the attorney general's acknowledgment was separate from the application and was not mentioned in the court's issuance of the interception warrant. Thus, appellant contends, construing the "four corners" of the warrant the court must not have considered the letter in issuing the warrant.

{¶ 34} Reviewing the arguments of the parties, we note that appellant never objected to the scope and nature of the September 27, 2017 suppression hearing, and never objected to the state's subsequent submission of Agent Noel's affidavit. Appellant's counsel's strategy was to limit the court's review to the warrant itself (which contained no mention of the attorney general's letter agreeing with the application for the interception warrant) and, strictly construing the requirements of R.C. 2933.53(B)(9), counsel hoped would lead to the suppression of the evidence obtained through execution of the warrant. This was sound trial strategy which could have been undermined had the issuing judge been questioned at a full evidentiary hearing.

{¶ 35} Based on the foregoing, we find that the court did not err in failing to conduct a full evidentiary hearing prior to ruling on the motion to suppress. Appellant's second assignment of error is not well-taken.

19.

{¶ 36} In his third assignment of error, appellant argues that the trial court erred when it sentenced him to consecutive sentences when its findings under R.C. 2929.14(C)(4) were not "clearly and convincingly" supported by the record. We review felony sentences under the two-pronged approach set forth in R.C. 2953.08(G)(2). *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶ 11. R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, modify, or vacate and remand a disputed sentence if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under * * * division * * * (C)(4) of section 2929.14 * * *;

(b) That the sentence is otherwise contrary to law.

R.C. 2929.14(C)(4) provides for the imposition of consecutive sentences. It states:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction

20.

imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 37} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. "Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.* "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29.

21.

{¶ 38} At appellant's November 6, 2017 sentencing hearing the court, imposing consecutive sentences, stated:

> Court further finds that in order to adequately punish the Defendant and to protect the public from future crime and that at least two of the offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the offenses was so great that no single prison term for any of the offenses committed adequately reflects the seriousness of the Defendant's conduct, * * *.
>
> This Court finds the sentences not disproportionate to the seriousness of the Offender's conduct and to the danger the Offender poses to the public.

The November 7, 2017 sentencing judgment mirrored the above-quoted language.

{¶ 39} Upon review, we reject appellant's argument that the consecutive sentences, imposed pursuant to a "rote recitation" of the statutory language, were not supported by "findings" in the record. The court complied with the statutory requirements under R.C. 2929.14(C)(4). Appellant's third assignment of error is not well-taken.

{¶ 40} Appellant's fourth and final assignment of error asserts that at sentencing the trial court engaged in improper judicial fact-finding when imposing the maximum

22.

eight-year sentence for trafficking in heroin. Appellant takes issue with the following statement made by the court at sentencing:

> Mr. Nettles, the testimony as trial suggests that you introduced heroin into our community. We, as a community, are now forced to pass Drug Enforcement levies and choose between vital public services or providing Narcan and drug treatment to the taxpayers who have shouldered the responsibility for the devastation you've inflicted on our community, and even more to the families who have lost loved ones to heroin and opiate addiction. This sentence is a message to my community and its families.

{¶ 41} Reviewing the evidence presented at trial, we agree that there was no direct testimony that appellant was the first individual to sell heroin in Fremont. However, in at least one of the intercepted phone calls between appellant and Miller, his supplier, there was a discussion about appellant diversifying by adding heroin dealing. His supplier/mentor indicated that appellant could "sew that whole area up," meaning he would have a monopoly on the market in Fremont and that people who sell in the "outskirts" make a lot of money. Referencing a prior sale of heroin, appellant stated that he was the "number one go getter." Accordingly, we cannot say that the court abused its discretion by sentencing appellant to a maximum sentence. Appellant's fourth and final assignment of error is not well-taken.

23.

**{¶ 42}** On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Sandusky County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                 _____
JUDGE

Arlene Singer, J.                 

                                           _____
Thomas J. Osowik, J.              JUDGE
CONCUR.

                                           _____
                                           JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.