[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Nettles*, Slip Opinion No. 2020-Ohio-768.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-768

THE STATE OF OHIO, APPELLEE, *v.* NETTLES, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Nettles*, Slip Opinion No. 2020-Ohio-768.]

*For purposes of R.C. 2933.53, an interception of a cell-phone call takes place both at the location of the cell phone and at the location of the government agent listening in on the call.*

(No. 2019-0078—Submitted October 23, 2019—Decided March 5, 2020.)

APPEAL from the Court of Appeals for Sandusky County, No. S-17-053, 2018-Ohio-4908.

_____

DEWINE, J.

{¶ 1} A statute, R.C. 2933.53(A), says that a warrant allowing law enforcement to listen in on telephone conversations may be issued by the common pleas court in a county "in which the interception is to take place."  The rule was relatively easy to understand back in the days of wiretaps and landlines, but the advent of cell phones has made things a bit more difficult.

{¶ 2} We deal here with a warrant issued by a Sandusky County judge that allowed Drug Enforcement Agency ("DEA") agents sitting in Toledo (Lucas County) to listen to cell-phone calls of an alleged drug trafficker who was based in Sandusky County. The drug trafficker says the warrant is no good because it was issued by a judge in the wrong county. He argues that his calls were intercepted in Toledo when the agents listened to them. The state agrees that the calls were intercepted at the Toledo listening post, but it says an interception also occurred in Sandusky County, where the cell phone was used. From the language of the statute—and taking into account the manner in which the interception technology works—we conclude that the state is right.

**The interception warrant**

{¶ 3} A DEA agent obtained a warrant to intercept the cell-phone calls of Keith Nettles, a suspected drug trafficker. The warrant was issued by the common pleas court in Nettles's home county, Sandusky. According to the warrant application, the calls would be intercepted in Sandusky County and listened to by agents at their Toledo office in Lucas County.

{¶ 4} Based in part on information obtained as a result of the warrant, Nettles was arrested and charged with multiple counts of drug trafficking. Before trial, Nettles moved to suppress all evidence derived from the warrant. He challenged the Sandusky County court's jurisdiction to issue the warrant and argued that the federal agent should have gone to Lucas County, where the listening post was, for a warrant. The trial court denied the motion. Nettles was convicted by a jury and sentenced to a long prison term.

{¶ 5} The Sixth District Court of Appeals affirmed Nettles's convictions and held that the interception took place both at the location of the phone and at the listening post. We accepted Nettles's discretionary appeal on a proposition of law that asserts that under R.C. 2933.53, an interception occurs only at the listening point.

2

**Interception of Nettles's phone calls**

{¶ 6} Before we get to the statute at issue, it is helpful to understand the way in which Nettles's calls were intercepted. Largely gone are the days when law-enforcement agents could install a physical wiretap on a phone line. So, to allow for surveillance of cell-phone communications, federal law requires that telecommunications carriers maintain technology that isolates, and enables the government to intercept, targeted communications pursuant to lawful authorization. 47 U.S.C. 1002(a).

{¶ 7} Here, DEA agents sought assistance from Verizon, Nettles's cell-phone provider. Pursuant to the federal mandate, Verizon has the ability to isolate a targeted call and transmit it to law enforcement during the course of a conversation. *See id.*; Justin (Gus) Hurwitz, *EncryptionCongress Mod (Apple + CALEA)*, 30 Harv.J.L. & Tech. 355, 376 (2017). At trial, a Verizon representative, and the federal agent who had applied for the warrant, explained how the interception process worked. Upon receiving the warrant, Verizon captured the contents of Nettles's incoming and outgoing calls while he was speaking and then funneled—redirected—the calls to the federal agents. When Verizon captures and redirects a call in this manner, it is not doing so at a precise point in space but rather across the entire network to which the government has gained access. *See* Hurwitz at 372. The moment a speaker speaks into a phone connected to the network, the interception—capture and redirection—takes place.

**Interception occurs both at the place where agents are listening and at the place where the phone is used**

{¶ 8} We start and—because it provides a clear answer—end with the language of the statute. R.C. 2933.53(A) provides that an appropriate official "may authorize an application for an interception warrant to a judge of the court of common pleas of the county in which the interception is to take place or in which the interception device is to be installed."

3

{¶ 9} The wiretap statutes do not specify where an interception is deemed to occur. They do, however, broadly define the term "intercept." "Intercept" means "the aural or other acquisition of the contents of any wire, oral, or electronic communication through the use of an interception device." R.C. 2933.51(C).

{¶ 10} The common meaning of "aural" is "of or relating to the ear" or "to the sense of hearing." *Webster's Third New International Dictionary* 144 (2002). Thus, an aural acquisition of the contents of a cell-phone call occurs at the place where the contents are first heard. *United States v. Rodriguez*, 968 F.2d 130, 136 (2d Cir.1992). So, Nettles is correct that Lucas County, where DEA agents overheard his phone calls, had jurisdiction to issue the interception warrant.

{¶ 11} But the definition of "intercept" also includes "other acquisition." The disjunctive phrase "aural or other acquisition" indicates that the acquisition may be "aural" but that other methods of acquisition count, too. As explained, the government, with the aid of phone companies, captures and redirects a phone call the moment a speaker speaks into a phone connected to the telecommunications network. Thus, a nonaural form of acquisition—capture and redirection—occurs at that point because the call is transmitted in an additional direction for the government's use. *See Rodriguez* at 136. The upshot is that an interception of a cell-phone call first occurs when the government captures and redirects the contents of the call at the place where a speaker uses the phone (other acquisition); an interception also occurs when the government overhears the call at the listening post (aural acquisition).

{¶ 12} Nettles, however, focuses solely on the word "aural" and asserts that an interception occurs only once, at the listening point. To support his argument, he compares the wiretap of a phone call to a football interception: when a quarterback's pass is intercepted by a defensive player, the interception is deemed to have occurred at the point where the defensive player took possession of the ball.

4

Similarly, here, he contends that the interception takes place only where the agent overhears the calls.

{¶ 13} But his argument ignores the term "other acquisition" and fails to account for modern interception technology. Even before the government acquires the contents of a phone call by hearing it, it has possessed its contents—by way of capture and redirection—at the moment the call occurs. Modern wiretap technology can achieve a dual-locus interception in real time that a football cornerback cannot.

{¶ 14} Though Nettles does not, one could argue that the statute's reference to "the county" suggests that an interception takes place in only one county. But the legislature has instructed us that when it comes to the construction of statutes, "the singular includes the plural, and the plural includes the singular." R.C. 1.43(A); *see also State v. D.B.*, 150 Ohio St.3d 452, 2017-Ohio-6952, 82 N.E.3d 1162, ¶ 16. Thus, we have little difficulty in concluding that Nettles's cell-phone calls were intercepted in both Lucas and Sandusky Counties.

{¶ 15} We point out also that federal courts applying a nearly identical provision have come to the same conclusion that we do. Federal law permits a judge to authorize "interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting." 18 U.S.C. 2518(3). "Intercept" is defined as the "aural or other acquisition" of communications. 18 U.S.C. 2510(4). Based on this definition, federal circuit courts have uniformly held that an interception occurs not only where the tapped phone is located but also where law-enforcement officers first overhear the call. *See, e.g., United States v. Jackson*, 849 F.3d 540, 551 (3d Cir.2017); *United States v. Dahda*, 853 F.3d 1101, 1112 (10th Cir.2017); *United States v. Cano-Flores*, 796 F.3d 83, 87 (D.C.Cir.2015); *United States v. Henley*, 766 F.3d 893, 911-912 (8th Cir.2014); *United States v. Luong*, 471 F.3d 1107, 1109 (9th Cir.2006); *United*

*States v. Ramirez*, 112 F.3d 849 (7th Cir.1997); *United States v. Denman*, 100 F.3d 399, 403 (5th Cir.1996); *Rodriguez*, 968 F.2d at 136.

**{¶ 16}** State courts interpreting similar statutes have reached the same conclusion. *See*, *e.g.*, *State v. Ates*, 217 N.J. 253, 272-273, 86 A.3d 710 (2014); *Davis v. State*, 426 Md. 211, 229-230, 43 A.3d 1044 (2012); *State v. McCormick*, 719 So.2d 1220, 1222 (Fla.App.1998).

## Conclusion

**{¶ 17}** Nettles's calls were intercepted—captured and redirected—by law enforcement in Sandusky County where he used his cell phone to facilitate drug trafficking. Thus, the government properly obtained the interception warrant in the Sandusky County Common Pleas Court. We affirm the judgment of the Sixth District.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

_____

Dave Yost, Attorney General, Benjamin M. Flowers, State Solicitor, Zachery P. Keller, Deputy Solicitor General, and Christopher Kinsler, Assistant Attorney General, for appellee.

Patrick J. Milligan Co., L.P.A., Patrick J. Milligan, and James E. Kocka, for appellant.

_____