[Cite as *State v. Worthan*, 2024-Ohio-21.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellant | : | C.A. No. 29938 |
| | : | |
| v. | : | Trial Court Case No. 2023 CR 00425 |
| | : | |
| CARLOS WORTHAN | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 5, 2024

. . . . . . . . . . .

SARAH H. CHANEY, Attorney for Appellant

LAWRENCE J. GREGER, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} The State of Ohio appeals from the trial court's order sustaining defendant-appellee Carlos Worthan's motion to suppress cell-phone data obtained pursuant to a search warrant issued by a local municipal court and served on AT&T's legal-compliance office in North Palm Beach, Florida.

**{¶ 2}** The trial court suppressed evidence seized pursuant to the warrant, holding that the municipal court lacked authority to authorize a search outside of its territorial jurisdiction. The State contends the trial court erred in sustaining Worthan's motion because the municipal court possessed authority to issue the warrant.

**{¶ 3}** We conclude that the municipal court could not authorize a search beyond its territorial jurisdiction. Accordingly, the trial court's judgment will be affirmed.

## I. Background

**{¶ 4}** The challenged search warrant was supported by an affidavit from Detective Elizabeth Hogue, an employee of the Huber Heights police department. She averred that Worthan had fled an attempted traffic stop on the night of October 27, 2021. A high-speed chase ensued as police followed him through Huber Heights to near the intersection of Needmore Road and Wagner-Ford Road, where a pursuing officer struck another vehicle. Police lost sight of Worthan's vehicle, which later was found outside of his apartment on Riverside Drive. Hogue's affidavit included a cell-phone number that belonged to Worthan.

**{¶ 5}** Detective Hogue averred that she was investigating the offense of failure to comply in violation of R.C. 2921.331. She requested a warrant to search for the following items of property associated with Worthan's cell-phone number from October 27 to October 28, 2021:

> Subscriber and account information, to wit: name, address, call detail records to include local and long distance telephone connection records and records of session times and durations; text, SMS and MMS detail records

to include content and records of times sent and received; IP session and destination information to include content and records of times sent and received; pictures; length of service and types of service utilized; telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; cellular telephone devise identifier (ESN/IMED/MEID); and source of payment for such service (including any credit card or bank account number) that corresponds to the telephone number; any other telephone numbers registered to the same address as the telephone number, Global Positioning System (GPS) precision location information and cell site triangulation information from the cellular telephone device assigned number.

**{¶ 6}** Hogue averred that the foregoing items of property or information were located on Worthan's cell phone (which police did not possess and the location of which was unknown to law enforcement) or were located "on computers or electronic storage devices" owned, operated, or controlled by AT&T Global, which had its legal-compliance office in North Palm Beach, Florida and which was a cell-phone carrier accessible to AT&T Wireless-serviced cell phones located in Montgomery County, Ohio. *See* Exhibits A (warrant) and B (affidavit) accompanying Worthan's July 3, 2023 Motion to Suppress.

**{¶ 7}** The municipal court issued the requested warrant on October 28, 2021. The warrant authorized police to enter the places described (AT&T Global's computers or electronic storage devices) within three days and to search for the items identified above. The warrant stated: "Within the territorial jurisdiction of this Court, you are authorized to

search the property described * * *." *Id.* at Exhibit A. During a hearing on Worthan's suppression motion, Hogue testified that she e-mailed the warrant to AT&T in Palm Beach, Florida. Less than two hours after obtaining the warrant, Hogue filed a "return" with the following notation: "Unknown when AT&T will respond with data request."

{¶ 8} On cross-examination, Hogue acknowledged that no law-enforcement officer entered AT&T's offices in Palm Beach to execute the warrant. She explained that she listed AT&T's compliance office in Florida as the location of the search because "that's where the data is stored." *See* August 3, 2023 Suppression Tr. at 15. Hogue maintained that she had executed the warrant by having "contact" with AT&T's Florida office. She sent the search warrant to AT&T in Florida and waited for AT&T to "pull the data" itself. Later in her testimony, Hogue again confirmed that she had sought and obtained "a warrant that authorized proper police authority to seize items of property which may be found in North Palm Beach, Florida[.]" *Id.* at 23. Hogue stated, "Yes, the data was in North Palm Beach, Florida." *Id.*

{¶ 9} In sustaining Worthan's motion, the trial court held that the municipal court's issuance of a warrant to be executed beyond its territorial jurisdiction constituted a fundamental violation of Crim.R. 41(A) and required suppression of the evidence obtained. The State has appealed pursuant to R.C. 2945.67(A) and Crim.R. 12(K).

## II. Analysis

{¶ 10} The State insists that the municipal court possessed authority to issue the search warrant. In support, the State reasons that Worthan's cell phone and the data it contained were located in Montgomery County. Although the data was stored in Florida,

the State asserts that it "technically" also was located in Montgomery County as it could be accessed from "basically anywhere." The State also argues that detective Hogue executed the warrant in Montgomery County by e-mailing it to AT&T in Florida.

{¶ 11} In addition, the State advances a policy argument, claiming logistical issues would arise if all warrants for AT&T cell-phone data had to be issued in Palm Beach. The State further cites the federal Stored Communications Act (SCA), which does not require an officer's physical presence to serve or execute a search warrant and which allows phone companies to compile and turn over data. The State notes too that some jurisdictions, including courts in Tennessee and New York, have upheld extra-territorial warrants for cell-phone records on the basis that the records either could have been accessed in the issuing state or that the warrant was executed, and a search occurred, when the warrant was sent from the issuing state. Finally, the State distinguishes *State v. Jacob*, 185 Ohio App.3d 408, 2009-Ohio-7048, 924 N.E.2d 410 (2d Dist.), which the trial court cited, and argues that *State v. Nettles*, 159 Ohio St.3d 180, 2020-Ohio-768, 149 N.E.3d 496, a wiretapping case, supports upholding the validity of the search warrant.

{¶ 12} An appeal from a suppression ruling presents a mixed question of fact and law. *State v. Ojezua*, 2016-Ohio-2659, 50 N.E.3d 14, ¶ 15 (2d Dist.). When considering a motion to suppress, the trial court acts as trier of fact and is best positioned to resolve factual questions and assess witness credibility. *State v. Turner*, 2015-Ohio-4612, 48 N.E.3d 981, ¶ 10 (2d Dist.). As a result, we must accept the trial court's factual findings if they are supported by competent, credible evidence. *Id.* We then must determine, without deference to the trial court, whether the facts satisfy the applicable legal standard. *Id.* The

trial court's application of law to its findings of fact is subject to de novo review. *Id.*

{¶ 13} In the present case, the pertinent facts are undisputed. The issue before us is a legal one. Pursuant to Crim.R. 41(A)(1), a search warrant "may be issued by a judge of a court of record to search and seize property located within the court's territorial jurisdiction." On appeal, the State does not challenge the trial court's determination that a fundamental violation of Crim.R. 41(A)(1), such as the one found here, requires suppression of the evidence obtained. The State instead insists that no violation occurred because the municipal court possessed authority to issue the warrant.

{¶ 14} The State first asserts that the warrant was executed in Montgomery County, within the municipal court's territorial jurisdiction, because Worthan's cell phone and the data it contained were located there and the data could have been accessed there. The State reasons that cell-phone data is unlike traditional evidence in the sense that it exists everywhere and can be retrieved from any location. We find these arguments to be unpersuasive. As an initial matter, the record does not reveal the location of Worthan's cell phone. At the time of the hearing, police had not obtained it. Nor did any suppression-hearing testimony establish that the data in fact could have been accessed from Montgomery County. Police did not have Worthan's phone, and the only evidence on the data issue was Detective Hogue's testimony that it was stored in Florida. Hogue's warrant affidavit described AT&T as a cell-service provider with service accessible to customers in Montgomery County, but she did not aver that AT&T physically stored any data in Ohio.

{¶ 15} But even if we accept the unestablished propositions that Worthan's cell

phone and its data were in Ohio and that the data theoretically could have been searched for and seized in Ohio, the fact remains that it was not. Detective Hogue acknowledged that the data was stored in Florida and that AT&T searched for and "pull[ed] the data" there. The fact that the data originated in Ohio and conceivably could have been accessed from Montgomery County does not negate what actually occurred. Notwithstanding any "could-have" arguments, the trial court correctly found that the municipal court in fact issued a warrant to search for evidence in Florida.

{¶ 16} We are equally unpersuaded by the State's argument that Hogue executed the warrant in Montgomery County by e-mailing it from there to AT&T in Florida. A New York trial court adopted this position in *People v. Williams*, 79 Misc.3d 809, 818, 188 N.Y.S.3d 417 (2023), reasoning that a detective "searched for defendant's cell records" in Albany, New York "when he faxed the warrant to AT&T" in Florida. The New York court analogized to wiretapping warrants, which are executed when police overhear or record a human voice and access transferred signals. *Id.* We are unpersuaded by this analogy. A wiretapping warrant authorizes listening, so execution of the warrant occurs when the listening happens. The hearing or recording of a voice is the search. In Worthan's case, however, no search occurred, and the warrant was not executed, until someone accessed AT&T's data-storage devices in Florida. The State's argument about e-mailing the warrant to Florida erroneously equates service with execution.

{¶ 17} The State next advances a policy argument, claiming that Palm Beach judges will be inundated with warrant requests if all search warrants for AT&T cell-phone data must be issued there. Our response is three-fold. First, even if the State's concern

is valid, it is irrelevant to the legal issue before us, namely whether Crim.R. 41(A) authorized the municipal court to issue its warrant.

{¶ 18} Second, the General Assembly potentially could avoid any logistical problem by enacting legislation authorizing Ohio courts to issue extra-territorial warrants for cell-phone data. The federal Stored Communications Act (SCA), 18 U.S.C. 2701, et. seq, has taken this approach, authorizing federal judges and magistrates to issue warrants for cell-service provider records with no territorial limit on their authority. In *United States v. Ackies*, 918 F.3d 190, 202-202 (1st Cir. 2019), the First Circuit Court of Appeals explained that an SCA warrant need only comply with existing "warrant procedures," which involve the method or way of issuing a warrant and do not encompass substantive territorial limitations such as the one found in Crim.R. 41 or the analogous federal rule. SCA warrants avoid problems inherent in using traditional warrants to obtain data from a cell-service provider. SCA warrants are issued on probable cause, but they function like subpoenas, enabling cell-service providers to respond directly to data requests without the presence of a law-enforcement officer. *See In re Search of Information*, D.D.C. No. 16-mj-00757 (BAH), 2017 WL 3445634, *19 (D.D.C. July 31, 2017). This process avoids situations such as the municipal court in the present case employing traditional warrant language to authorize Detective Hogue to perform a search that she personally never conducted and never intended to conduct.

{¶ 19} Third, even absent action by the General Assembly, it appears that the State could have avoided securing a warrant in Palm Beach by obtaining an SCA warrant from an Ohio common pleas court rather than obtaining a traditional warrant from the

municipal court. The federal legislation authorizes an SCA warrant for cell-phone data to be issued by either a state or federal "court of competent jurisdiction." 18 U.S.C. 2703. The SCA defines a "court of competent jurisdiction" to include, inter alia, any federal district court, magistrate judge of such a court, or federal court of appeals with jurisdiction over the offense being investigated. 18 U.S.C. 2711(3)(a)(i). Under the SCA, a "court of competent jurisdiction" also includes "a court of general criminal jurisdiction of a State authorized by the law of that State to issue search warrants." 18 U.S.C. 2711(3)(B).

{¶ 20} Although an Ohio municipal court is authorized by Ohio law to issue search warrants, it is a court of limited criminal jurisdiction, not general criminal jurisdiction. *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542, ¶ 14; *State v. Hudson*, 2d Dist. Miami Nos. 2018-CA-10, 2018-CA-11, 2018-Ohio-4880, ¶ 20. Therefore, 18 U.S.C. 2703 does not enable an Ohio municipal court to issue an SCA warrant. An Ohio common pleas court, however, is a court of general criminal jurisdiction authorized by Ohio law to issue search warrants. Therefore, it qualifies as a "court of competent jurisdiction" under 18 U.S.C. 2703 to issue an SCA warrant. In *Kolle v. Kyle*, S.D. Ohio No. 2:21-cv-984, 2021 WL 3485868 (Aug. 9, 2021), the U.S. District Court for the Southern District of Ohio recently upheld the validity of an Ohio common pleas court's warrant for out-of-state records under the SCA. In overruling objections to a magistrate's report and recommendation, the federal district court reasoned:

> Lastly, Plaintiff also argues that as an Ohio state court judge, Judge Bender lacks jurisdiction to issue a warrant for electronic data located in Overland Park, Kansas. The Court disagrees, as the Stored

Communications Act contemplates issuance of warrants for electronic communication outside of the issuing judge's geographic jurisdiction. *See United States v. Ackies*, 918 F.3d 190, 202 (1st Cir. 2019) (finding that "Congress was clear that it intends to allow [ ] courts to permit searches under section 2703 beyond the courts' usual geographical jurisdictions."). Judge Bender therefore did not lack jurisdiction to issue such a warrant.

*Id.* at *4.

{¶ 21} We note too that "[o]ther federal courts examining the issue of territorial jurisdiction have further found that the SCA authorizes state search warrants for out-of-state records even when the law of the state only provides state courts with authority to issue warrants within the state." *United States v. Peterson*, W.D. Missouri No. 22-00196-01-CR-W-DGK, 2023 WL 5920869, *6 (July 18, 2023), report and recommendation adopted, 2023 WL 5918310 (Sept. 11, 2023); *see also United States v. Purcell*, S.D.N.Y. No. 18cr81, 2018 WL 4378453, *6-7 (Sept. 13, 2018) ("In addition to federal courts, the SCA authorizes 'a court of general criminal jurisdiction of a State authorized by the law of that State to issue search warrants' to issue warrants for ESI [electronically stored information]. * * * Notably, the statute makes no distinction between the territorial reach of warrants issued by federal and state courts pursuant to its terms. Indeed, it would make little sense for the statute to require of state courts that which it does not require of federal courts—namely, that the ESI provider be within the ordinary territorial jurisdiction of the court issuing the warrant. Such a reading would defeat the entire purpose of the statute. * * * Again, the SCA offers no indication that state courts are more restricted in their territorial reach than federal courts when issuing warrants for ESI under § 2703(a). If the

territorial restrictions in the Federal Rules of Criminal Procedure do not restrict the authorizations given by Congress in the SCA, then surely neither do parallel restrictions in state court rules and procedures.").

**{¶ 22}** In addition to its policy argument, the State cites *State v. Hoskins*, Tenn. Crim. App. No. E2020-00052-CCA-R3-CD, 2021 WL 2964331 (July 15, 2021), in which a Tennessee appellate court found a warrant for AT&T records in Florida valid because the Florida "address listed on the search warrant was simply a service address" and "the electronic records could be accessed in Knox County, Tennessee." *Id.* at *14. Here, however, Detective Hogue did not testify that Palm Beach was merely a "service address." She testified that the cell-phone data was stored there and AT&T retrieved the records there. As for the possibility that the data could have been accessed in Montgomery County, we considered and rejected that argument above.

**{¶ 23}** The State also distinguishes this court's opinion in *Jacob*, 185 Ohio App.3d 408, 2009-Ohio-7048, 924 N.E.2d 410, which the trial court cited. In *Jacob*, a municipal court issued a search warrant to be executed at a home in California. The warrant, which was faxed to police in San Francisco, involved a search and seizure of evidence including collectible figurines. On appeal, the defendant argued for suppression of the evidence because (1) the Ohio municipal court lacked jurisdiction to issue a warrant to be executed in California and (2) the warrant was not supported by probable cause and the good-faith exception did not apply.

**{¶ 24}** On review in *Jacob*, this court agreed that the warrant had been issued without probable cause for execution outside of the municipal court's jurisdiction. Our

analysis focused largely on the municipal court's lack of authority to authorize a search in California. We quoted with approval the proposition that " 'a judge of a court of record in Ohio is not authorized by law to issue a search warrant outside of the judge's jurisdiction and can no more be considered a magistrate for Fourth Amendment purposes than anyone else lacking that authority—be that judge the finest jurist who can be found in a sister state or in a foreign country.' " *Id.* at ¶ 24, quoting *State v. Hardy*, 2d Dist. Montgomery No. 16964, 1998 WL 543368, *6 (Aug. 28, 1998) (Fain, J., concurring in judgment). "In other words," we explained in *Jacob*, "a magistrate who acts beyond the scope of his authority ceases to act as a magistrate for Fourth Amendment purposes." *Id.* We then held that in the defendant's situation "a violation of statutory provisions that a judge can issue a valid search warrant only within his or her court's jurisdiction is a fundamental violation of Fourth Amendment principles." *Id.* at ¶ 25. We opined that "[a]llowing one state's court to determine when property, residences, and residents of another state may be subject to search and seizure would trample the sovereignty of states to determine the procedures by which a warrant may be issued and executed and of their courts to determine the consequences of a failure to follow those laws." *Id.* Finally, we reasoned "that the magistrate's lack of authority to issue the search warrant was a fundamental constitutional violation that could not be cured" by reliance on the good-faith exception, which we characterized as "peripheral" under the circumstances.

{¶ 25} In the present case, the State does not argue that any violation of Crim.R. 41(A) was not a fundamental one. Nor does it advance a good-faith analysis. Instead, the State distinguishes *Jacob* and takes the position that no violation of Crim.R. 41(A)

occurred in Worthan's case. The State reasons that *Jacob* involved searching people and places physically located in California whereas the present case involves searching cell-phone data located in Montgomery County. The State asserts that *Jacob* is further distinguishable because the warrant in Worthan's case in fact was executed by police in Montgomery County. The State also argues that "[l]aw enforcement was still reviewing and searching the data within Montgomery County and the phone itself and the data it contains [were] still within Montgomery County." The State then reasons that no constitutional violation occurred because "Worthan is an Ohio citizen, with property located in Ohio, with data on the property accessible from basically anywhere." According to the State, "[i]t would make less sense for a Florida judge to determine when an Ohio citizen and their cell phone are subject to search and seizure than it would for an Ohio judge to make that determination."

{¶ 26} We find the foregoing arguments to be unpersuasive. It is true that *Jacob* involved searching physical locations in California, including a home. But Worthan's case similarly involved searching physical places in Florida. According to the warrant, they included "computers or electronic storage devices," where Detective Hogue testified that the data was stored. We also reject the State's argument that *Jacob* is distinguishable because the warrant in Worthan's case was executed in Montgomery County whereas the warrant in *Jacob* was executed in California. If the State were correct about Hogue executing the warrant when she e-mailed it to AT&T in Florida, the same could be said about police executing the warrant in *Jacob* when they faxed it to San Francisco. But we recognized in *Jacob* that the warrant was executed when police conducted their search

in California. Similarly, the warrant here was executed when AT&T's computers and storage devices were searched in Florida.

{¶ 27} As for the State's assertion that "[l]aw enforcement was still reviewing and searching the data within Montgomery County and the phone itself and the data it contains [were] still within Montgomery County," the record does not reveal any law-enforcement search of data occurring within Montgomery County. As Hogue explained, AT&T retrieved the data itself after being served with the warrant and then sent the data to police in Montgomery County. With regard to Worthan's phone and its data still being present in Montgomery County, we note again that police never obtained the phone. But even if the phone did remain here, police did not search it here, or anywhere, pursuant to the warrant.

{¶ 28} It also may be true that Worthan is an Ohio citizen who possesses cell-phone data located in Ohio. As explained above, however, detective Hogue obtained a warrant to search for that data in Florida on computers and electronic-storage devices maintained by AT&T in Palm Beach. In short, the inescapable fact is that the municipal court issued a warrant to search for and seize evidence located outside of its territorial jurisdiction. On that point, *Jacob* is indistinguishable.

{¶ 29} We note too that Detective Hogue's affidavit sought a warrant to search AT&T's computers and data-storage devices in Florida because, according to her suppression-hearing testimony, "that's where the data is stored." By its own terms, however, the warrant the municipal court issued only authorized a search for that data "[w]ithin the territorial jurisdiction" of the municipal court. "A court's territorial jurisdiction is its power over cases arising in or involving persons within a defined geographical unit."

*Jacob* at ¶ 38 (Grady, J., concurring). Because Palm Beach is beyond the municipal court's territorial jurisdiction, the warrant was unambiguously deficient on its face. *Id.*

{¶ 30} Finally, the State argues *Nettles*, 159 Ohio St.3d 180, 2020-Ohio-768, 149 N.E.3d 496, a wiretapping case, supports upholding the validity of the municipal court's search warrant. In *Nettles*, a statute, R.C. 2933.53(A), authorized a common-pleas court to issue a wiretapping warrant in the county "in which the interception is to take place." A Sandusky County judge issued a warrant authorizing government agents sitting in Lucas County to listen to cell-phone calls made from Sandusky County. The defendant argued that the warrant was invalid as it needed to be issued in Lucas County, the location where the interception occurred. Based on the nature of interception technology, the Ohio Supreme Court held that interception occurred in Lucas County, where the agents listened, and in Sandusky County, where the defendant spoke. *Nettles* at ¶ 11. After explaining how cell-phone calls are intercepted, the *Nettles* court reasoned that the government, with the aid of Verizon, intercepted the call when the government captured and redirected the contents of the call where the speaker used the phone and also intercepted the call when agents overheard the call at their listening post. Because the first interception occurred in Sandusky County, the Ohio Supreme Court upheld the validity of the warrant. *Id.* at ¶ 17.

{¶ 31} Unlike *Nettles*, Worthan's case does not involve a wiretapping warrant authorizing agents in Palm Beach to listen to phone calls originating in Montgomery County. The State recognizes the distinction but argues that the rationale of *Nettles* supports finding jurisdiction in Worthan's case, "where the phone where the data is being

taken from is located, which would be in Montgomery County." Here, however, the data was located in Palm Beach. Detective Hogue testified that AT&T retrieved the data from computers and electronic-storage devices located there. Unlike *Nettles*, the data was not retrieved from both Montgomery County and Palm Beach.

{¶ 32} For the foregoing reasons, the trial court correctly sustained Worthan's suppression motion. The State's assignment of error is overruled.

### III. Conclusion

{¶ 33} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

EPLEY, J. and LEWIS, J., concur.